# Matter of Manohar Rao ARRABALLY, Respondent
# Matter of Sarala YERRABELLY, Respondent

*Decided as amended August 16, 2012*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

  An alien who leaves the United States temporarily pursuant to a grant of advance parole does not thereby make a "departure . . . from the United States" within the meaning of section 212(a)(9)(B)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II) (2006). *Matter of Lemus*, 24 I&N Dec. 373 (BIA 2007), clarified.

FOR RESPONDENTS: Jon Eric Jesson, Esquire, Stamford, Connecticut

FOR THE DEPARTMENT OF HOMELAND SECURITY: John P. Marley, Senior Attorney

BEFORE: Board Panel: WENDTLAND and GREER, Board Members. Dissenting Opinion: PAULEY, Board Member.

WENDTLAND, Board Member:


In a decision dated August 20, 2009, an Immigration Judge found the respondents inadmissible as charged under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (2006), as intending immigrants not in possession of valid immigrant visas or other entry documents. He further found them ineligible for adjustment of status under section 245(i) of the Act, 8 U.S.C. § 1255(i) (2006), based on their inadmissibility under section 212(a)(9)(B)(i)(II), and he ordered them removed from the United States.

This case presents the question whether the respondents, who left the United States temporarily under a grant of advance parole, thereby effected a "departure," which resulted in their inadmissibility under section 212(a)(9)(B)(i)(II). We hold that they did not. Consequently, the respondents'

---

[1] Upon a motion of the Department of Homeland Security that is expressly unopposed by the respondents, we amend the April 17, 2012, order in this case. The amended order adds footnote 6 and makes editorial changes to reflect its inclusion.

appeal will be sustained in part and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondents, a husband and wife, are natives and citizens of India. The male respondent and his wife were admitted to the United States temporarily as nonimmigrants on December 15, 1999, and October 29, 2000, respectively. The male respondent's visa expired on June14, 2000, but he remained in the United States without lawful immigration status for more than 5 years thereafter, and his wife also remained in this country for several years after her visa expired on April 28, 2001.

On May 11, 2004, the male respondent became the beneficiary of an approved employment-based immigrant visa petition, Form I-140 (Immigrant Petition for Alien Worker), with a priority date of April 27, 2001. On June 2, 2004, he and his wife applied for adjustment of status under section 245(i) of the Act before the United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS").[2]

The respondents' applications for section 245(i) adjustment were prima facie approvable when filed, but they were held in abeyance for several years to await the availability of visa numbers in the male respondent's oversubscribed preference category. During this interval, the respondents found it necessary to return to India to attend to their aging parents, but they were appropriately concerned that the USCIS would deem their adjustment applications abandoned if they left the United States.

To prevent their applications from being deemed abandoned, the respondents applied for "advance parole" from the USCIS pursuant to section 212(d)(5)(A) of the Act. *See* 8 C.F.R. §§ 212.5(f) (providing for the advance authorization of parole); 245.2(a)(4)(ii)(A) (2004) (providing that "the departure of an [adjustment] applicant . . . shall be deemed an abandonment of the application constituting grounds for termination of any pending application for adjustment of status, unless the applicant was previously granted advance parole by the Service for such absences, and was inspected upon returning to the United States"). The respondents' requests for advance

---

[2] The respondents seek adjustment of status under section 245(i) of the Act (rather than section 245(a)) because they "failed . . . to maintain continuously a lawful status since entry into the United States" within the meaning of section 245(c) of the Act. Section 245(i) adjustment is available for a fee to certain aliens who are "physically present in the United States" but covered by section 245(c). Section 245(i)(1)(A)(ii) of the Act.

parole were granted, and they traveled to India and back on several occasions between 2004 and 2006, returning each time in accordance with the terms of their advance parole. On September 10, 2006, the respondents returned from India for the last time and were paroled into the United States.

In separate notices issued on October 15, 2007, the USCIS informed the respondents that their applications for adjustment of status were denied. Specifically, the notices informed the respondents that they were no longer "admissible" to the United States, as required for adjustment of status, because they had departed this country (under grants of advance parole) after having been "unlawfully present" here for 1 year or more and were seeking admission less than 10 years after having departed, a set of circumstances that rendered them inadmissible under section 212(a)(9)(B)(i)(II) of the Act.

The male respondent promptly sought reopening of his adjustment application before the USCIS, noting the humanitarian considerations that had prompted his request for advance parole and contending that he and his wife should not be punished for having departed the United States when the DHS knew about, and expressly approved of, those departures by granting them advance parole. On July 21, 2008, a USCIS Field Office Director issued a decision acknowledging the force of some of the male respondent's arguments but ultimately concluding that his inadmissibility under section 212(a)(9)(B)(i)(II) of the Act necessitated the denial of his application. In arriving at that conclusion, the Field Office Director invoked *Matter of Lemus*, 24 I&N Dec. 373 (BIA 2007) ("*Lemus I*"), in which we held that section 245(i) adjustment is unavailable to aliens who are inadmissible under section 212(a)(9)(B)(i)(II) and are not eligible for a section 212(a)(9)(B)(v) waiver.[3] *See also Matter of Lemus*, 25 I&N Dec. 734 (BIA 2012) ("*Lemus II*") (reaffirming the holding of *Lemus I*).

On November 21, 2008 the DHS commenced these removal proceedings by filing notices to appear in Immigration Court, charging the respondents with inadmissibility under section 212(a)(7)(A)(i)(I) of the Act. By serving these notices to appear on the respondents, the DHS terminated their parole, thereby restoring them to the status they allegedly held at the time of their last parole into the United States, that is, as intending immigrants who are not in possession of valid admission documents. *See* 8 C.F.R. §§ 212.5(e)(2)(i), 245.2(a)(4)(ii)(A) (2008). On February 12, 2009, the respondents conceded removability through counsel and sought to renew their adjustment applications before the Immigration Judge. At the conclusion

---

[3] The respondents are not eligible for a waiver under section 212(a)(9)(B)(v) because they lack a qualifying relative whose hardship could be considered under that provision.

of an evidentiary hearing conducted on August 20, 2009, the Immigration Judge found the respondents inadmissible under section 212(a)(9)(B)(i)(II) of the Act and ineligible for section 245(i) adjustment, and he ordered them removed to India.

## II. ANALYSIS

The respondents' first argument on appeal is that their departures from the United States under a grant of advance parole were not the sort of "departures" that render aliens inadmissible under section 212(a)(9)(B)(i)(II) of the Act. For the following reasons, we agree.

As previously noted, the USCIS and the Immigration Judge found the respondents inadmissible to the United States under section 212(a)(9)(B)(i)(II) of the Act, which provides as follows:

> Any alien (other than an alien lawfully admitted for permanent residence) who—
>     . . .
>     (II) has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's *departure* or removal from the United States, is inadmissible.

(Emphasis added.)

The terms "depart" and "departure" are employed in numerous different contexts throughout the Act, but they are not statutorily defined. This is understandable. It would be a daunting task for any statutory draftsman to supply a single comprehensive definition for terms of such broad and variable application. Nevertheless, according to one dictionary, "depart" means simply "to go away: leave," while "departure" denotes "the act or an instance of departing." *Merriam-Webster's Collegiate Dictionary* 309 (10th ed. 2002). As used in section 212(a)(9)(B)(i)(II) of the Act, a "departure" could thus be interpreted to encompass *any* instance in which a person has "gone away" from or "left" the territory of the United States. Indeed, we have stated that the term "departure" should be given such a broad construction in the section 212(a)(9)(B)(i)(II) context. *Lemus I*, 24 I&N Dec. at 376-77.

In *Lemus I*, the respondent maintained that section 212(a)(9)(B)(i)(II) should be construed so that the term "departure" would cover only a formal "voluntary departure" under section 240B of the Act, 8 U.S.C. § 1229c (2006), that is, a departure made after the commencement of removal proceedings and in lieu of an order of removal. *Id*. at 376. We disagreed, concluding that this interpretation of "departure" was too narrow. *Id.* Indeed, in refuting the argument presented, we opined that the term should be interpreted broadly, "to encompass any 'departure' from the United States, regardless of whether it is a voluntary departure in lieu of removal or under threat of removal,

or it is a departure that is made wholly outside the context of a removal proceeding." *Id*. at 376-77.

We continue to espouse the view that an alien like the respondent in *Lemus I*—who accrued more than 1 year of unlawful presence in the United States and then departed of his own volition without having obtained advance permission to return—fell within the class of individuals that Congress intended to cover when it enacted section 212(a)(9)(B)(i)(II). *See Lemus II*, 25 I&N Dec. 734. However, our unqualified declaration in *Lemus I* that inadmissibility under section 212(a)(9)(B)(i)(II) could be triggered by literally "any departure" from the United States has had implications that bear additional consideration. Specifically, as this case illustrates, immigration adjudicators have interpreted our "any departure" statement to cover departures made pursuant to a grant of advance parole. *See Cheruku v. Att'y Gen. of U.S.*, 662 F.3d 198 (3d Cir. 2011) (affirming unpublished decisions of an Immigration Judge and this Board concluding that an alien who had departed the United States under a grant of advance parole was inadmissible under section 212(a)(9)(B)(i)(II) and, by extension, ineligible for section 245(i) adjustment).

Purely as a matter of semantics, there is nothing to preclude the term "departure" from being interpreted to encompass departures made by advance parolees. Indeed, viewed in isolation and taken in its broadest possible sense, "departure" would also presumably include departures by people who stray across the border by accident, are induced to cross the border by deception or threat, or are kidnaped outright and spirited across the border against their will. It is well established, however, that we do *not* interpret statutory terms in isolation.

Instead, when interpreting the Act, we should be guided to a degree by common sense, taking into account Congress' intention to enact "a symmetrical and coherent regulatory scheme" in which all parts are fit into a harmonious whole. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)). The words of section 212(a)(9)(B)(i)(II) of the Act should thus "be read in their context and with a view to their place in the overall statutory scheme," since it is only by reading the language in context that its meaning can become evident. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. at 132-33) (internal quotation mark omitted). When section 212(a)(9)(B)(i)(II) is understood in context, it becomes clear to us that Congress did not intend it to cover aliens—like the respondents—who have left and returned to the

United States pursuant to a grant of advance parole.[4] To the extent that *Lemus I* suggested otherwise, we hereby clarify it accordingly.

As we have noted elsewhere, section 212(a)(9)(B)(i)(II) was enacted pursuant to section 301(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-575 (effective Apr. 1, 1997). *See Matter of Rodarte*, 23 I&N Dec. 905, 909 (BIA 2006). The legislative history of section 212(a)(9)(B)(i)(II) is rather sparse. Nevertheless, the manifest purpose of the provision (and of the related provisions surrounding it) is to "compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter." *Id.*

Section 212(a)(9)(B)(i)(II) thus places most aliens who are unlawfully present in the United States for a significant period of time on fair notice that if they leave this country—whether through removal, extradition, formal "voluntary departure," or other means—they will be unwelcome to return for at least 10 years thereafter. But the same cannot be said for the respondents, who left the United States and returned with Government authorization pursuant to a grant of advance parole.

---

[4] USCIS officials and their predecessors at the former Immigration and Naturalization Service ("INS") have consistently taken the position that departure under a grant of advance parole *is* a "departure" for purposes of section 212(a)(9)(B)(i)(II). *See* Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations Directorate, et al., to USCIS Field Leadership, at 16, 17 (May 6, 2009), *reprinted in* 86 Interpreter Releases, No. 20, May 18, 2009, app. I at 1393, 1394 ("Neufeld Memo"); Memorandum from Paul W. Virtue, Acting Exec. Assoc. Comm'r, INS Office of Programs, to INS Officials, at 3-4 (Nov. 26, 1997), *reprinted in* 74 Interpreter Releases, No. 46, Dec. 8, 1997, app. III at 1842, 1844 ("Virtue Memo"). Because this interpretation of the statutory scheme is embodied in internal DHS memoranda rather than in regulations, it is entitled to respect to the extent it has the "power to persuade," but it is not binding. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (internal quotation marks omitted); *see also Matter of Castillo-Padilla*, 25 I&N Dec. 257, 263 (BIA 2010) (declining to defer to internal DHS policy statements equating "conditional parole" under section 236(a)(2)(B) of the Act, 8 U.S.C. § 1226(a)(2)(B) (12006), with "parole" under section 212(d)(5)(A)); *Matter of Briones*, 24 I&N Dec. 355, 363-65 & n.7 (BIA 2007) (disagreeing with an INS policy memorandum stating that section 245(i) of the Act contains an "implicit waiver" of inadmissibility for aliens covered by section 212(a)(6)(A)(i)). Although the Neufeld and Virtue Memos *declare* that one who leaves the United States under a grant of advance parole has thereby "departed" for section 212(a)(9)(B)(i)(II) purposes, we find them unpersuasive because they provide little substantive explanation for that conclusion and grapple with none of the counterarguments. We observe, moreover, that the Attorney General's determination is ultimately controlling when it comes to questions of statutory interpretation. Section 103(a)(1) of the Act, 8 U.S.C. § 1103(a)(1) (2006).

Typically, an alien who presents himself for inspection at a United States port of entry is permitted to enter only if he possesses a valid visa or other document authorizing his "admission." Sections 211, 214, 222 of the Act, 8 U.S.C. §§ 1181, 1184, 1202 (2006 & Supp. III 2009). Sometimes, however, an alien who lacks a valid visa or other entry document may need to come into the United States temporarily "for urgent humanitarian reasons or [for] significant public benefit," in which case, with certain exceptions not pertinent here, the DHS may, in its discretion, "parole" the alien into this country for a limited time, subject to conditions. Section 212(d)(5)(A) of the Act.[5] Although a grant of parole does not "admit" an alien into the United States, *see* section 101(a)(13)(B) of the Act, 8 U.S.C. § 1101(a)(13)(B) (2006), it does typically allow him to leave the inspection facility free from official custody and to be physically present inside the United States until the purpose of his parole is completed. *See Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007) (discussing the purposes of parole). Once the DHS determines that the purpose of an alien's parole has been satisfied, parole is terminated and the alien reverts to the status of any other applicant for admission by operation of law. Section 212(d)(5)(A) of the Act; *see also* 8 C.F.R. § 245.2(a)(4)(ii)(A).

As its name implies, "advance parole" is simply parole that has been requested and authorized in advance based on an expectation that the alien will be presenting himself for inspection without a valid visa in the future. 8 C.F.R. § 212.5(f). Advance parole can be requested from abroad or at a port of entry, but typically it is sought by an alien who is already inside the United States and who wants to leave temporarily but fears that he will either be excluded as an inadmissible alien upon return or be deemed to have abandoned a pending application for an immigration benefit. *See Matter of G-A-C-*, 22 I&N Dec. 83, 88 (BIA 1998); *see also* 8 C.F.R. §§ 245.2(a)(4)(ii)(A), 1245.2(a)(1)(ii) (2011).

---

[5] By its terms, section 212(d)(5)(A) authorizes the "Attorney General" to parole aliens into the United States. Until 2002, this parole authority was exercised exclusively by the former INS as the Attorney General's delegate. *See, e.g.*, *Matter of Singh*, 21 I&N Dec. 427, 434 (BIA 1996) (citing cases). On March 1, 2003, however, the INS was dissolved and its functions—including those pertaining to the inspection, admission, and parole of aliens—were transferred from the Department of Justice to the DHS pursuant to section 441 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2192 (Nov. 25, 2002) ("HSA") (codified at 6 U.S.C. § 251 (2006)). As a result, parole authority is now exercised exclusively by the DHS. 8 C.F.R. §§ 212.5, 1212.5 (2011). The reference to the Attorney General in section 212(d)(5)(A) is thus deemed to refer to the Secretary of Homeland Security. *See* HSA § 1517, 116 Stat. at 2311 (codified at 6 U.S.C. § 557 (2006)).

The DHS takes the position that a grant of advance parole does not technically authorize such an alien to *depart* from the United States. *See* Neufeld Memo, *supra*, at 16. But as a practical matter, the DHS is well aware that aliens who are inside the United States only request advance parole in order to facilitate foreign travel. By granting advance parole, the DHS thus understands that, as a discretionary humanitarian measure, it is telling the alien that he can leave the United States with assurance that his pending applications for immigration benefits will not be deemed abandoned during his absence and "that he will be *paroled* back into the United States upon return, under prescribed conditions, if he cannot establish that he is admissible at that time." *Matter of G-A-C-*, 22 I&N Dec. at 88. To obtain this assurance, the alien submits an Application for Travel Document (Form I-131), which requires him to explain how he qualifies for advance parole—such as through the pendency of an adjustment application together with a need to travel abroad for emergent personal or bona fide business reasons—and to identify the circumstances that warrant its issuance. Advance parole is thus treated as a distinct benefit for which the alien must demonstrate his eligibility and worthiness.

In short, an undocumented alien's departure under a grant of advance parole is qualitatively different from other departures, because it presupposes both that he will be permitted to return to the United States thereafter and that he will, upon return, continue to pursue the adjustment of status application he filed before departing.[6] We do not believe that Congress intended an alien to become inadmissible under section 212(a)(9)(B)(i)(II) and, by extension, ineligible for adjustment of status solely by virtue of a trip abroad that (1) was *approved* in advance by the United States Government on the basis of an application demonstrating the alien's qualification for and worthiness of the benefit sought, (2) presupposed the alien's *authorized return* thereafter, and (3) was requested solely for the purpose of *preserving* the alien's eligibility for adjustment of status. Applying section 212(a)(9)(B)(i)(II) to such an alien

---

[6] Nothing in the foregoing discussion is intended to suggest that a grant of parole into the United States following a trip abroad is ever guaranteed. Rather, we acknowledge that at the time of the returning alien's application for admission, the DHS possesses discretionary authority under section 212(d)(5) of the Act to determine whether parole is appropriate. *See* Eligibility of Arriving Aliens in Removal Proceedings To Apply for Adjustment of Status and Jurisdiction To Adjudicate Applications for Adjustment of Status, 71 Fed. Reg. 27,585, 27,586 n.1 (May 12, 2006) ("[A] decision authorizing advance parole does not preclude denying parole when the alien actually arrives at a port-of-entry, should DHS determine that parole is no longer warranted."). A grant of advance parole before the alien's trip abroad simply provides him with a practical expectation that, so long as circumstances do not meaningfully change and the DHS does not discover material information that was previously unavailable, the DHS's discretion to parole him at the time of his return to a port of entry will likely be exercised favorably.

vindicates none of the purposes for which the statute was enacted, largely defeats the regulatory purpose of preserving advance parolees' eligibility for adjustment of status, and has the paradoxical effect of transforming advance parole from a humanitarian benefit into a means for barring relief.[7]  The language of section 212(a)(9)(B)(i)(II) does not require such a result.[8] Accordingly, we hold that an alien who has left and returned to the United States under a grant of advance parole has not made a "departure . . . from the United States" within the meaning of section 212(a)(9)(B)(i)(II) of the Act.

---

[7] As the DHS points out on appeal, documents authorizing advance parole bear explicit warnings that the parolee may be inadmissible under section 212(a)(9)(B) and ineligible for adjustment of status upon return.  *See also Cheruku v. Att'y Gen. of U.S.*, 662 F.3d at 208 & n.10 (noting the existence of such warnings).  However, because we do not believe that Congress understood a trip under a grant of advance parole to be a "departure" within the meaning of section 212(a)(9)(B)(i)(II), the nature or clarity of such warnings is ultimately beside the point.

[8] Our dissenting colleague opines that "[i]t would have been an easy drafting task to except departures under a grant of advance parole [from the scope of section 212(a)(9)(B)(i)(II)] had Congress been inclined to do so."  *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 782 (BIA 2012) (Pauley, dissenting).  The premise underlying the dissenting opinion seems to be that Congress must be presumed to use words like "departure" in their broadest conceivable sense, regardless of the statutory context and purpose, unless it affirmatively enumerates exceptions.  We disagree with that premise because it is antithetical to the well-established principle that statutes must be read in context and with a view to their purpose.  *See, e.g.*, *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis"); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.").

We also do not share our dissenting colleague's concern that tension exists between this opinion and that of the Third Circuit in *Cheruku v. Attorney General of U.S.*, 662 F.3d 198. In *Cheruku*, the Third Circuit did not hold that it was compelled by unambiguous language in section 212(a)(9)(B)(i)(II) to treat an alien's trip abroad under a grant of advance parole as a "departure" that would trigger inadmissibility.  Rather, the court simply afforded deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*, 467 U.S. 837 (1984), to a nonprecedential Board decision applying section 212(a)(9)(B)(i)(II) to an advance parolee.  There is nothing in *Cheruku* that precludes the Board from revisiting that issue.  *See generally Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).  On the contrary, the Third Circuit emphasized that the petition for review did not challenge the Board's interpretation of the term "departure" or otherwise dispute its determination that the alien was inadmissible under section 212(a)(9)(B)(i)(II). *Cheruku v. Att'y Gen. of U.S.*, 662 F.3d at 205 n.5.

We emphasize that we hold only that an alien cannot become inadmissible *under section 212(a)(9)(B)(i)(II)* solely by virtue of a trip abroad undertaken pursuant to a grant of advance parole. Our decision does not preclude a trip under a grant of advance parole from being considered a "departure" for other purposes, nor does it call into question the applicability of any other inadmissibility ground. On the contrary, it is well settled that an alien who leaves the United States and returns under a grant of advance parole is subject to the grounds of inadmissibility once parole is terminated, even if he had been "deportable" rather than "inadmissible" before the trip's commencement. *See Matter of G-A-C-*, 22 I&N Dec. at 89-91; *Matter of Torres*, 19 I&N Dec. 371, 373 (BIA 1986); *see also Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1326-27 (11th Cir. 2003); *Dimenski v. INS*, 275 F.3d 574, 577-78 (7th Cir. 2001); 8 C.F.R. § 245.2(a)(4)(ii)(B).

This can sometimes lead to harsh consequences, particularly for aliens with criminal convictions, when the relevant grounds of inadmissibility are more expansive than the corresponding deportability grounds. But ordinarily the relevant inadmissibility grounds were already applicable to the alien before he traveled abroad (as potential bars to adjustment of status, for instance), and thus the alien's trip outside the United States only affects the *manner* in which the fact of inadmissibility arises, by also making it an available basis for a removability charge. Section 212(a)(9)(B) is fundamentally different, however, because its focus on "departure" means that it alone *creates* a condition of inadmissibility that may not have existed before the alien left the United States. The respondents were not even arguably covered by section 212(a)(9)(B) until they left under grants of advance parole.

In light of the foregoing, we conclude that the respondents are *not* inadmissible to the United States under section 212(a)(9)(B)(i)(II) of the Act. Consequently, they are not ineligible for section 245(i) adjustment based on the rationale of *Lemus I* and *Lemus II*. In light of this disposition, we have no occasion to address the remaining issues raised in the respondents' appeal, all of which are premised on the assumption of their inadmissibility under section 212(a)(9)(B)(i)(II).

## III. CONCLUSION

In conclusion, the respondents are inadmissible and removable under section 212(a)(7)(A)(i)(I) of the Act, but they are not inadmissible under section 212(a)(9)(B)(i)(II) or ineligible for section 245(i) adjustment on that basis. The respondents' appeal will therefore be sustained in part, and the record will be remanded to the Immigration Judge for further proceedings.

**ORDER:** The appeal is sustained in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*DISSENTING OPINION:* Roger A. Pauley, Board Member

I respectfully dissent. The majority labors unpersuasively to find that a departure under a grant of advance parole is not a "departure" for purposes of inadmissibility under section 212(a)(9)(B)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II) (2006), such that the respondents are not ineligible for adjustment of status under section 245(i) of the Act, 8 U.S.C. § 1255(i) (2006). As noted in the majority opinion, however, such a construction is at odds with the straightforward meaning of "departure." Moreover, no claim is made that giving the term "departure" an expansive meaning, as we explained was appropriate in *Matter of Lemus*, 24 I&N Dec. 373, 376-77 (BIA 2007), leads to absurd results. Rather, it merely leads to an outcome that the majority apparently deem undesirable.

Moreover, the majority's position is not merely at odds with the normal and natural meaning of the term "departure"; it is contrary to the consistent understanding of the Department of Homeland Security ("DHS") and its predecessors at the former Immigration and Naturalization Service ("INS"), which, from shortly after the April 1, 1997, effective date of section 212(a)(9)(B) to the present time, have interpreted a departure under a grant of advance parole as a "departure" for purposes of section 212(a)(9)(B)(i)(II). *See* Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations Directorate, et al., to USCIS Field Leadership, at 16, 17 (May 6, 2009), *reprinted in* 86 Interpreter Releases, No. 20, May 18, 2009, app. I at 1393, 1394 ("Neufeld Memo"); Memorandum from Paul W. Virtue, Acting Exec. Assoc. Comm'r, INS Office of Programs, to INS Officials, at 3-4 (Nov. 26, 1997), *reprinted in* 74 Interpreter Releases, No. 46, Dec. 8, 1997, app. III at 1842, 1844 ("Virtue Memo"). While such internal interpretive policies are not binding on the Board, courts, including the Supreme Court, have found that similar agency policies are entitled to "great deference," "[p]articularly . . . when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are as yet untried and new.'" *Udall v. Tallman*, 380 U.S. 1, 16 (1965) (quoting *Power Reactor Dev. Co. v. Int'l Union of Elec., Radio and Mach. Workers, AFL-CIA*, 376 U.S. 396, 408 (1961) (quoting *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315 (1933))) (internal quotation marks omitted); *see also Davis v. United States*,

495 U.S. 472, 484 (1990) ("[W]e give an agency's interpretations and practices considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use."); *Bankers Life and Cas. Co. v. United States*, 142 F.3d 973, 979-80 (7th Cir. 1998).

Not only does the majority not accord these agency understandings "great deference," it gives them no weight. Furthermore, the relevant enforcement agency (INS and DHS) reached this conclusion because, in the words of the Neufeld Memo, *supra*, at 16, "[b]y granting advance parole or a refugee travel document, USCIS does not authorize the alien's departure from the United States; it merely provides a means for the alien to return to the United States, regardless of admissibility." In short, a grant of advance parole is *not a Government-authorized departure* such as might support a finding that Congress could not have intended to subject an alien who thereby departs to the provisions of section 212(a)(9)(B).

In light of the above, and notwithstanding the majority's view, Congress could reasonably determine that aliens who leave the United States under a grant of advance parole do so at their own risk in terms of eligibility for relief upon their return as applicants for admission and must weigh the benefit of leaving pursuant to such a grant against the possible adverse consequences. Furthermore, as the majority acknowledges, grants of advance parole come with an explicit warning (mandated by, and applicable ever since the 1997 Virtue Memo, *supra*) that the alien may, upon return, be inadmissible under section 212(a)(9)(B) and ineligible for adjustment of status. *See Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 779 n.7 (BIA 2012). While the majority may disagree with requiring such an election, aliens may be put to such a choice, and whether or not to do so is precisely the sort of consideration that is for the Congress, not adjudicators like the Board. *See Brady v. United States*, 397 U.S. 742 (1970) (finding that criminal defendants may be put to the difficult decision whether to plead guilty or go to trial and that a guilty plea is not involuntary because it is induced by a potentially higher sentence if guilt is determined after trial).

In our original decision in *Matter of Lemus*, 24 I&N Dec. at 378, we emphasized that Congress had not created a waiver in section 212(a)(9)(B) preserving eligibility for section 245(i) adjustment, as it had with other immigration provisions. That observation applies here as well. It would have been an easy drafting task to except departures under a grant of advance parole had Congress been inclined to do so, such as by inserting the parenthetical phrase "other than pursuant to a grant of advance parole" after "departure."

The majority decision also creates tension with the recent decision in *Cheruku v. Attorney General of U.S.*, 662 F.3d 198 (3d Cir. 2011), which deferred to our decision in *Matter of Lemus* and found section 212(a)(9)(B)(i)(II) applicable to bar eligibility for adjustment of status under

section 245(i) in the context, as here, where the alien had departed pursuant to a grant of advance parole.  It is also contrary to the position taken by the Board in unpublished orders, all of which the majority acknowledges. Moreover, the majority's creation of an exception to the term "departure" for aliens who leave the country under a grant of advance parole injects uncertainty and will give rise to future claims that other types of departures should not be considered such.  I would, absent absurdity, give the term "departure" its ordinary and natural meaning to include the instant case and, accordingly, would affirm the Immigration Judge's decision.[1]

---

[1]  Moreover, it is not true that "[t]he premise underlying [this] dissenting opinion seems to be that Congress must be presumed to use words like 'departure' in their broadest conceivable sense, regardless of the statutory context and purpose, unless it affirmatively enumerates exceptions."  *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 779 n.8. Rather, my premise is that, absent absurdity, Congress should be found to have used words in their ordinary meaning.  In this instance, that includes, in my view, finding that an alien's *intentional choice* to leave the United States constitutes a "departure," notwithstanding it may come at a price in terms of triggering a new ground of inadmissibility and resultant ineligibility for certain relief upon return.  Specifically, to rebut the majority's assertion, I would likely not (though there is no need to resolve the question here) find that an alien who involuntarily left the country as a result of being kidnapped, for example, had engaged in a "departure" because the term "departure" may well connote a voluntary act.  Nor would such a kidnapping necessarily constitute a "removal" within the meaning of section 212(a)(9)(B)(i)(II), which speaks in terms of an "alien's departure or removal from the United States," since the latter term may well connote only a removal in the immigration sense.