# Matter of Delis Ismael FURTADO, Beneficiary of a visa petition filed by Helena Eloisa Johnson, Petitioner

*Decided May 17, 2024*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  A petitioner seeking approval of a Form I-130 for an adopted child from a country that is a party to the Convention on Protection of Children and Co-Operation in Respect of Intercountry Adoption, *opened for signature* May 29, 1993, S. Treaty Doc. No. 105-51, 1870 U.N.T.S. 167 (entered into force May 1, 1995; for the United States Apr. 1, 2008), should provide, regardless of the beneficiary's length of United States residence: (1) a written statement from the Central Authority of the child's country of origin stating that it is aware of the child's presence in the United States and of the adoption, and that it has determined that the child is not habitually resident in the country of origin; and (2) an adoption order or amended adoption order incorporating the language of the statement from the Central Authority.

(2)  An adopted child will not be considered habitually resident in the United States unless the petitioner shows that the Central Authority of the child's country of origin did not respond to the request for a habitual residence statement, that the Central Authority responded that it would not write a habitual residence statement, or that the United States Department of State has confirmed that the Central Authority does not issue habitual residence statements.

FOR THE PETITIONER:  Brigite Melo-Cronin, Esquire, Randolph, Massachusetts

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Maura Ooi, Associate Counsel

BEFORE:  Board Panel:  GREER and GOODWIN, Appellate Immigration Judges; PEPPER, Temporary Appellate Immigration Judge.

GOODWIN, Appellate Immigration Judge:

In a decision dated August 18, 2021, the Director of the National Benefits Center ("Director") of United States Citizenship and Immigration Services ("USCIS"), denied the Form I-130, Petition for Alien Relative, filed by the petitioner on behalf of the beneficiary as the adopted child of a United States citizen pursuant to section 201(b)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1151(b)(2)(A)(i) (2018).  The petitioner appealed from that decision.  During the pendency of the appeal, the Board requested supplemental briefing on the applicability of the Convention on Protection of Children and Co-Operation in Respect of Intercountry

Adoption, *opened for signature* May 29, 1993, S. Treaty Doc. No. 105-51, 1870 U.N.T.S. 167 (entered into force May 1, 1995; for the United States Apr. 1, 2008) ("Hague Convention"). *See* 42 U.S.C. §§ 14901–14954 (2018) (implementing the Hague Convention); 22 C.F.R. § 96.17 (2024) (discussing the Hague Convention's effective date). The Board received a supplemental brief from the Department of Homeland Security ("DHS"). The petitioner's appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The beneficiary, whose country of origin is Cabo Verde, entered the United States on a B-2 visitor visa in 2013. On May 2, 2017, the petitioner, who is the beneficiary's grandmother, adopted the beneficiary in Massachusetts. After the adoption, the petitioner filed a Form I-130 on the beneficiary's behalf, seeking to classify him as the adopted child of a United States citizen.

On April 1, 2020, the Director issued a Notice of Intent to Deny ("NOID") the visa petition, stating that the petitioner had not submitted sufficient evidence to show that the adoption falls outside the scope of the Hague Convention. In relevant part, the NOID stated that the petitioner had not shown that at the time of the adoption, the beneficiary was not habitually resident in Cabo Verde. The NOID further stated that the petitioner could establish this by submitting: "(1) a written statement from the Central Authority of [Cabo Verde] indicating that it is aware of the child's presence in the United States and of the . . . adoption, and that it has determined that the child is not habitually resident in that country, and (2) an adoption order or amended adoption order incorporating the language of the statement." The Director informed the petitioner that if she attempted to contact the Central Authority in Cabo Verde and did not receive a timely response, she should advise the Director of her efforts and then submit evidence to show that prior to the adoption, the beneficiary resided in the United States for a substantial period of time and established compelling ties in the United States.

In response to the NOID, the petitioner submitted additional documents to show that the beneficiary had resided with her in the United States since 2013. On August 18, 2021, the Director denied the visa petition, finding that the evidence submitted did not establish that the beneficiary satisfies the definition of an adopted child under section 101(b)(1)(E) of the INA, 8 U.S.C. § 1101(b)(1)(E) (2018). Specifically, the Director found that the petitioner did not submit sufficient evidence to show that the adoption falls outside the scope of the Hague Convention because she did not submit a statement of habitual residence from the Central Authority of Cabo Verde or

provide evidence that she tried to obtain this statement.  The petitioner appeals this decision.

## II.  ISSUE

The contested issue is whether a petitioner who has filed a Form I-130 on behalf of an adopted child whose country of origin is a party to the Hague Convention must provide either a statement from the Central Authority of the adoptee's home country or evidence that she attempted to obtain such a statement.  We review this issue de novo.  8 C.F.R. § 1003.1(d)(3)(iii) (2020).

## III.  ANALYSIS

A petitioner seeking to classify an adopted child as the child of a United States citizen under section 201(b)(2)(A)(i) of the INA, 8 U.S.C. § 1151(b)(2)(A)(i), must establish that the beneficiary falls within the definition of a "child" pursuant to section 101(b)(1) of the INA, 8 U.S.C. § 1101(b)(1).  An adopted child must generally meet the requirements in section 101(b)(1)(E) of the INA, 8 U.S.C. § 1101(b)(1)(E).  If the adopted child is from a country that is a party to the Hague Convention, however, a more rigorous set of requirements applies.  *See* INA § 101(b)(1)(G), 8 U.S.C. § 1101(b)(1)(G).  The beneficiary's home country, Cabo Verde, is a party to the Hague Convention.  *See* U.S. Dep't of State, Country-Specific Adoption Information, Cabo Verde—Foreign Authorization," 2022 WL 1470257 (May 5, 2022).

### A.  Hague Convention Adoption Process

The Hague Convention is intended:

> a.  to establish safeguards to ensure that intercountry adoptions take place in the best interests of the child and with respect for his or her fundamental rights as recognized in international law;
> b.  to establish a system of co-operation amongst Contracting States to ensure that those safeguards are respected and thereby prevent the abduction, the sale of, or traffic in children;
> c.  to secure the recognition in Contracting States of adoptions made in accordance with the Convention.

Hague Convention, Art. 1.  As a party to the Hague Convention, the United States must adhere to the agreement in all cases in which a United States citizen adopts a child from a Convention country.  *See* Hague Convention, Art. 2(1); *see also* Intercountry Adoption Act of 2000, Pub. L. 106-279, § 2,

114 Stat. 825, 826 (codified at 42 U.S.C. § 14901) (implementing the Hague Convention into United States' law). The Hague Convention applies to an adoption where: (1) the child is habitually resident in one Convention country, (2) the adoptive parent is habitually resident in a different Convention country, and (3) the child has immigrated or will immigrate to the adoptive parent's country based on the adoption. Hague Convention, Art. 2(1).

USCIS has established a petitioning process for Hague Convention adoptions by United States citizens that differs significantly from the Form I-130 petitioning process and requires the filing and adjudication of a Form I-800A and a Form I-800. *See* 8 C.F.R. §§ 204.300–204.314 (2024). The process requires the petitioner to file the Form I-800A, Application for Determination of Suitability to Adopt a Child from a Convention Country, before adopting the child. *See* 8 C.F.R. §§ 204.306(b)(1), 204.310; *see also* Hague Process, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov /adoption/immigration-through-adoption/hague-process (last visited May 5, 2024). The Form I-800A must be filed with documentation that a home study has been completed. 8 C.F.R. § 204.310(a)(3)(viii). Once the Form I-800A is approved, the petitioner must apply to obtain a proposed adoptive placement with the Hague Convention country of origin's Central Authority. Hague Process, *supra*. The Form I-800, Petition to Classify Convention Adoptee as an Immediate Relative, must also be filed before adoption. *Id*., *see also* 8 C.F.R. § 204.309(b)(1). The Form I-800 process applies even when a child is present in the United States if the adoption was entered on or after the Convention effective date and the child's habitual residence immediately before arrival in the United States was in a Convention country. *See* 8 C.F.R. § 204.2(d)(2)(vii)(F) (2024). The Hague Convention adoption process should be used in all adoptions of beneficiaries from Hague Convention countries after the Convention effective date, with the limited exceptions discussed below.

### B. Exceptions to the Hague Convention Adoption Process

A Form I-130 petition may be filed on behalf of a child from a Convention country who was adopted on or after the effective date of the Hague Convention only if the petitioner shows that at the time of the adoption, the petitioner was not habitually resident in the United States, or the beneficiary was not habitually resident in a Convention country. *See* 8 C.F.R. § 204.2(d)(2)(vii)(D); *cf*. 8 C.F.R. § 204.2(d)(2)(vii)(F) ("USCIS will not approve a Form I-130 . . . on behalf of an alien child who is present in the United States based on an adoption that is entered on or after the Convention effective date, but whose habitual residence immediately before the child's

arrival in the United States was in a Convention country.").  When adjudicating a Form I-130 in an adoption case, USCIS will make findings regarding the petitioner's and the beneficiary's respective countries of habitual residence and will determine, based on these findings, whether the Convention applies.  *See* 5 USCIS Policy Manual, pt. E, ch. 3, https://www.uscis.gov/policy-manual/volume-5-part-e-chapter-3; *see also* 8 C.F.R. § 1003.1(d)(3)(iii) (stating that the Board reviews USCIS' findings de novo).

The petitioner in this case does not aver that she was habitually resident outside of the United States at the time of the adoption.  *See* 8 C.F.R. § 204.2(d)(2)(vii)(E) ("For purposes of [8 C.F.R. § 204.2(d)(2)(vii)(D)], USCIS will deem a United States citizen . . . to have been habitually resident outside the United States, if the citizen satisfies the 2-year joint residence and custody requirements by residing with the child outside the United States.").  Therefore, in determining whether the petitioner's Form I-130 may be approved, only the beneficiary's habitual residence is at issue.

## C.  The Beneficiary's Habitual Residence

The relevant regulation provides that

> [a] child whose classification is sought as a Convention adoptee is, generally, deemed . . . to be habitually resident in the country of the child's citizenship.  If the child's actual residence is outside the country of the child's citizenship, the child will be deemed habitually resident in that other country, rather than in the country of citizenship, if the Central Authority (or another competent authority of the country in which the child has his or her actual residence) has determined that the child's status in that country is sufficiently stable for that country properly to exercise jurisdiction over the child's adoption or custody.

8 C.F.R. § 204.303(b).

Although an adopted child residing in the United States may be deemed to be habitually resident in the United States rather than his or her home country, the Hague Convention does not specify the evidence that must be provided to make such a showing.  *See* Hague Conf. on Priv. Int'l L., The Implementation and Operation of the 1993 Hague Intercountry Adoption Convention:  Guide to Good Practice, Guide No. 1, at 108 (2008), http://www.hcch.net/upload/adoguide_e.pdf (observing that habitual residence is generally treated as a factual concept that will be a matter for the authorities of a Convention country to determine).  The relevant regulation states only that a "child will not be considered to be habitually resident in any country to which the child travels temporarily, or to which he or she travels either as a prelude to, or in conjunction with, his or her adoption

and/or immigration to the United States." 8 C.F.R. § 204.303(b). The regulation does not specify what is required to establish that a child is habitually resident in the United States.

To approve a Form I-130 filed on behalf of an adopted child from a Convention country, USCIS generally requires: (1) a written statement from the Central Authority of the child's country of origin indicating that it is aware of the child's presence in the United States and of the adoption, and that it has determined that the child is not habitually resident in the country of origin; and (2) an adoption order or amended adoption order incorporating the language of the statement from the Central Authority. *See* 5 USCIS Policy Manual, pt. E, ch. 3(B). If the petitioner does not submit a determination letter from the designated Central Authority in the child's country of origin, USCIS requires a showing that the Central Authority did not respond to the request for a habitual residence statement, that the Central Authority responded that it would not write a habitual residence statement, or that the United States Department of State has confirmed that the Central Authority does not issue habitual residence statements.[1] *Id.* at ch. 3(C).

Although internal USCIS policy is not binding on the Board, we nonetheless find this particular policy requirement persuasive in this case. *See Matter of Triana*, 28 I&N Dec. 659, 663 n.4 (BIA 2022); *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 776 n.4 (BIA 2012) (stating that policy set forth in agency memoranda "is entitled to respect to the extent it has the 'power to persuade,' but it is not binding" (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000))). USCIS' requirement that a petitioner demonstrate that he or she contacted the foreign Central Authority is consistent with the United States' obligations under the Hague Convention.

The Hague Convention aims, in part, to establish a system of cooperation amongst Convention countries and to ensure that adoptions completed under the Convention are recognized in other Convention countries. Hague Convention, Art. 1(b)–(c); *see also* 42 U.S.C. § 14951 (stating that the United States will recognize and give full effect to adoptions concluded between two Convention countries that meet the requirements of the Convention but became final before the Convention entered into force for the United States). When adoptions that fall within the scope of the Convention are erroneously processed as national adoptions, "the authorities in the receiving country are

---

[1] In such cases, USCIS may determine that a child is habitually resident in the United States if the petitioner demonstrates that the child did not enter the United States for the purpose of adoption, that the child actually resided in the United States for a substantial period of time and established compelling ties to the United States, and, for adoptions occurring after February 3, 2014, that the adoption decree confirms that the Central Authority of the child's country of origin was notified of the adoption proceedings and did not object. 5 USCIS Policy Manual, pt. E, ch. 3(C).

not in a position to certify, under Article 23, that the adoption has been made in accordance with the Convention, and as a result the adoption is not entitled to recognition in other Contracting States under the Convention." Hague Conf. on Priv. Int'l L., *supra* at 117.

We agree with DHS' argument on appeal that failing to consider the foreign Central Authority's views on the child's residence could "undermine international cooperation between the United States and other Convention countries" and could lead to countries refusing to recognize United States adoptions or possibly limiting intercountry adoptions with the United States. Moreover, requiring that the Central Authority of the child's country of origin be given the opportunity to weigh in on the child's habitual residence satisfies the regulatory requirement that the child's Convention country of origin determine that the child's status is "sufficiently stable for [the United States] properly to exercise jurisdiction over the child's adoption or custody." 8 C.F.R. § 204.303(b); *see also* Hague Convention, Art. 16(d) (providing that the Central Authority of the child's country of origin must determine whether the prospective adoption is in the best interest of the child).

We therefore hold that a petitioner seeking approval of a Form I-130 for an adopted child from a country that is a party to the Hague Convention should provide, regardless of the beneficiary's length of United States residence: (1) a written statement from the Central Authority of the child's country of origin stating that it is aware of the child's presence in the United States and of the adoption, and that it has determined that the child is not habitually resident in the country of origin; and (2) an adoption order or amended adoption order incorporating the language of the statement from the Central Authority. If the petitioner is unable to obtain such a statement, an alternative showing is required. An adopted child will not be considered habitually resident in the United States unless the petitioner shows that the Central Authority of the child's country of origin did not respond to the request for a habitual residence statement, that the Central Authority responded that it would not write a habitual residence statement, or that the United States Department of State has confirmed that the Central Authority does not issue habitual residence statements. This is a threshold requirement that applies to all I-130s filed on behalf of adopted children from Convention countries, regardless of the child's length of residence in the United States.[2]

---

[2] We express no opinion at this time as to what information must be provided to the Central Authority, in what manner this information must be communicated, what evidence establishing attempts to obtain a letter must be provided, or any other USCIS policy requirements concerning habitual residence. These issues are not before us.

## IV.  APPLICATION TO THE PETITIONER'S CASE

Because the petitioner did not comply with the Hague Convention adoption process and instead filed an I-130 petition after the beneficiary's adoption, we must determine whether the petitioner has met her burden of demonstrating that the beneficiary is eligible for an immediate relative visa as the adopted child of a United States citizen under section 201(b)(2)(A)(i) of the INA, 8 U.S.C. § 1151(b)(2)(A)(i), and is not subject to the Hague Convention.  *See Matter of Brantigan*, 11 I&N Dec. 493, 495 (BIA 1966) (holding that the petitioner has the burden to establish eligibility for the benefit sought).

As explained above, the Director informed the petitioner in the NOID that she could demonstrate the beneficiary's adoption was not subject to the Hague Convention by providing, inter alia, a written statement from the Central Authority of Cabo Verde stating that it was aware of the beneficiary's adoption and that it has determined that the beneficiary is not a habitual resident of Cabo Verde.  Alternatively, if the petitioner was unable to obtain this statement, the NOID instructed her to submit evidence showing that she attempted to obtain the statement.

In response to the NOID, the petitioner submitted documents to show that the beneficiary had been residing in the United States prior to the adoption and had not resided in Cabo Verde since a very young age.  The documents included medical records and guardianship documents dating from February 2013 to the beneficiary's adoption in May 2017.

Despite this evidence of residence in the United States, the petitioner did not submit a written statement from the Central Authority of Cabo Verde regarding the beneficiary's habitual residence or an adoption order or amended adoption order incorporating the language of the statement from the Central Authority.  Moreover, the petitioner did not aver or provide evidence that she attempted to obtain the habitual residence statement from the Central Authority of Cabo Verde without success, or that the Cabo Verde Central Authority responded that it would not write a habitual residence statement as requested.  Absent a Central Authority statement or a showing that she was unable to obtain such a statement, the record evidence of the beneficiary's residence in the United States is insufficient to meet the petitioner's burden of establishing that the beneficiary is eligible for a visa as the adopted child of a United States citizen under section 201(b)(2)(A)(i) of the INA, 8 U.S.C. § 1151(b)(2)(A)(i).

The petitioner submitted additional documents to the Board on appeal, including an affidavit stating that she made "many unsuccessful attempts to contact the Hague Central Authority of Cabo Verde."  This Board will not accept or consider evidence offered for the first time on appeal that was not

submitted to the Director.  *See Matter of Soriano*, 19 I&N Dec. 764, 766 (BIA 1988) (holding that when a petitioner has notice of required evidence and an opportunity to respond, the Board will not consider evidence submitted on appeal); *see also Matter of Obaigbena*, 19 I&N Dec. 533, 537 (BIA 1988) (holding that when a petitioner fails to respond to the NOID, the Board will not consider any evidence submitted on appeal).  The petitioner may file a new I-130 visa petition on the beneficiary's behalf that is supported by evidence that satisfies the requirements discussed and establishes that the beneficiary is eligible for immediate relative status.

**ORDER:**  The appeal is dismissed.