# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3350

ASIM CHAUDHRY, *et al.*,

*Petitioners*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
Nos. A97-614-000, -001, -002 & -003

ARGUED SEPTEMBER 19, 2012—DECIDED JANUARY 17, 2013

Before BAUER, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Petitioners Asim Chaudhry, his
wife Neelofer Asim, and their two minor children—all
citizens of Pakistan—came to the United States in 2003
as nonimmigrant visitors. Three years later, Chaudhry
filed an application to adjust his status to "lawful perma-
nent resident." The United States Citizenship and Immigra-
tion Services (CIS) rejected Chaudhry's application be-

cause, by statute, applicants who have accrued more than 180 days without "lawful status" lose their eligibility for adjustment of status. As CIS calculated it, Chaudhry's nonimmigrant status expired on January 21, 2005, some 17 months before he filed to become a permanent resident. Chaudhry argued to the Board of Immigration Appeals that he enjoyed lawful status until considerably later, through December 13, 2005. His view depends on the possibility of stacking a number of adjustment applications. Holding that a pending adjustment application does not toll the accrual of days without "lawful status" for adjustment of status purposes, the Board rejected Chaudhry's petition. We conclude that the Board's interpretation of the law is reasonable and we thus deny the petition for review.

# I

Chaudhry and his family (to whom we refer collectively as Chaudhry unless the context requires otherwise) lawfully entered the United States on June 4, 2003, pursuant to Asim Chaudhry's B-1 visa. That document gave Chaudhry lawful nonimmigrant status as a temporary business visitor through September 6, 2003. See 8 U.S.C. § 1101(a)(15)(B). Before the expiration of that status, Chaudhry and his then-employer Amtal Incorporated filed a Form I-129 petition, seeking to change Chaudhry's status from B-1 to L-1 (skilled worker). See 8 U.S.C. § 1101(a)(15)(L). CIS approved that petition on January 21, 2004; this had the effect of extending Chaudhry's lawful nonimmigrant status through January 21, 2005.

In the meanwhile, Chaudhry began the process of becoming a lawful permanent resident. On January 14, 2004, Amtal filed a Form I-140 visa petition that sought to designate Chaudhry a multi-national executive or manager, while Chaudhry simultaneously submitted a Form I-485 application for adjustment of status to lawful permanent resident. This "concurrent filing," if approved, would have allowed Chaudhry and his family (as derivative beneficiaries) to become lawful permanent residents pursuant to 8 U.S.C. § 1255. For reasons that are not altogether clear, Chaudhry and Amtal then submitted a second set of I-140 and I-485 forms in June 2005. CIS rejected both of these adjustment applications on December 13, 2005, because by then Chaudhry no longer worked for Amtal.

After leaving Amtal, Chaudhry began working for Sarus Oil. Supported by Sarus, Chaudhry submitted a third adjustment-of-status application on May 25, 2006. CIS approved Sarus's I-140 employment-based visa petition in 2007, but on March 7, 2008, it rejected Chaudhry's I-485 adjustment-of-status application. The application was denied, CIS explained, because more than 180 days had elapsed between the expiration of Chaudhry's lawful nonimmigrant status on January 21, 2005, and the filing of his final adjustment application on May 25, 2006. (Chaudhry had never formally extended or renewed his L-1 visa.) He was therefore ineligible to become a lawful permanent resident by virtue of 8 U.S.C. § 1255(k), which prohibits adjustment of status for applicants who "for an aggregate period exceeding 180 days [have] failed to maintain, continuously, a lawful status."

Removal proceedings for Chaudhry and his family then commenced before an Immigration Judge (IJ). They conceded removability as alleged in the Notices to Appear, but Chaudhry renewed his application for adjustment of status. Chaudhry argued that he remained in "lawful status" for purposes of 8 U.S.C. § 1255(k) through December 13, 2005, the date CIS rejected his first and second adjustment applications. If that were correct, then Chaudhry would have accumulated only 163 days of unlawful status by the time of his third filing on May 25, 2006. Relying heavily on various agency memoranda addressing the meaning of "unlawful presence" under a separate provision of the Immigration and Nationality Act, the IJ agreed with the government that Chaudhry's "lawful status" ended on January 21, 2005 (489 days before the final adjustment application). The IJ entered an order denying Chaudhry's application for adjustment of status and granting voluntary departure within 30 days.

Chaudhry appealed to the Board, but on September 26, 2011, it issued a decision dismissing the appeal and reinstating the IJ's grant of voluntary departure. The Board acknowledged that "unlawful presence" and "unlawful status" are distinct concepts. To that extent, it implicitly rejected the IJ's reasoning, which seemed to conflate the issues. Nevertheless, the Board held that "[t]he pendency of [Chaudhry's prior] adjustment application[s] had no bearing" on Chaudhry's nonimmigrant status after it expired on January 21, 2005. Chaudhry petitions for review of the Board's order.

**II**

The key issue here is straightforward: what is the meaning of "lawful status" for purposes of 8 U.S.C. § 1255(k)? Chaudhry argues that "lawful status" for adjustment eligibility purposes extends to a person who has a prior adjustment-of-status application still pending, even if that person's nonimmigrant status has expired and not been extended; the government contends that it does not.

This question is important because § 1255 allows nonimmigrants to adjust their status to that of a person "lawfully admitted for permanent residence" under certain conditions. 8 U.S.C. § 1255(a). Ordinarily, a person "who is in unlawful immigration status on the date of filing the application for adjustment of status . . . or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States" is ineligible for adjustment. 8 U.S.C. § 1255(c)(2). However, for certain lawfully admitted aliens who file an employment-based application for adjustment of status, there is an exception to this bar. Such applicants remain eligible for adjustment, "notwithstanding subsection (c)(2)," if they have not:

> for an aggregate period exceeding 180 days—(A) failed to maintain, continuously, a lawful status; (B) engaged in unauthorized employment; or (C) otherwise violated the terms and conditions of [their] admission.

8 U.S.C. § 1255(k)(2). In other words, applicants like Chaudhry enjoy a 180-day grace period during which

they may allow their "lawful status" to lapse without forfeiting adjustment eligibility.

Chaudhry argues that he maintained "lawful status" throughout the pendency of his first two applications for adjustment of status because he was in a "period of stay authorized by the Attorney General." Chaudhry borrows this terminology from 8 U.S.C. § 1182(a)(9)(B)(ii), which defines "unlawful *presence*" for purposes of an alien's future admissibility. An alien is "unlawfully present" if she is "present in the United States after the expiration of the period of stay authorized by the Attorney General"; the total duration of such unlawful presence may affect her later efforts to reenter the United States. 8 U.S.C. §§ 1182(a), (a)(9)(B)(ii). As the Board explained, however, unlawful presence and unlawful status are distinct concepts in the argot of immigration specialists. It is entirely possible for aliens to be lawfully present (*i.e.*, in a "period of stay authorized by the Attorney General") even though their lawful status has expired. See *In re L-K*, 23 I. & N. Dec. 677, 680-81 (BIA 2004) (distinguishing status and presence). Indeed, just that ordinarily happens when a person's status becomes unlawful while she has a pending adjustment application. See 8 U.S.C. § 1182(a)(9)(B)(iv).

The Immigration and Nationality Act does not provide a statutory definition for "lawful immigration status," see 8 U.S.C. § 1101, but CIS has defined the phrase in its regulations. See 8 C.F.R. § 245.1. For purposes of 8 U.S.C. § 1255(c)(2), the regulation provides that the term "lawful immigration status":

will *only* describe the immigration status of an individual who is: (i) In lawful permanent resident status; (ii) *An alien admitted to the United States in nonimmigrant status as defined in section 101(a)(15) of the Act, whose initial period of admission has not expired or whose nonimmigrant status has been extended in accordance with part 214 of this chapter*; (iii) In refugee status under section 207 of the Act, such status not having been revoked; (iv) In asylee status under section 208 of the Act, such status not having been revoked; (v) In parole status which has not expired, been revoked or terminated; or (vi) Eligible for the benefits of Public Law 101-238 (the Immigration Nursing Relief Act of 1989) and files an application for adjustment of status on or before October 17, 1991.

8 C.F.R. § 245.1(d)(1) (emphasis added). This definition expressly forecloses the argument that a "period of stay authorized by the Attorney General" might also constitute "lawful status" for purposes of § 1255.

This is a reasonable agency interpretation entitled to our deference. *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Indeed, were we to adopt Chaudhry's reading, a nonimmigrant could indefinitely extend her eligibility for adjustment of status, despite the expiration of her lawful nonimmigrant status, simply by filing successive applications. This would thwart the basic aim of § 1255(k), which creates a *limited* grace period for certain nonimmigrants whose lawful status has lapsed; it would instead perversely encourage nonimmigrants to file non-meritorious applications to forestall ineligibility.

Chaudhry counters that there are equally serious prob-lems on the other side: a narrower construction of "lawful status" for § 1255(k) purposes, he argues, will place some nonimmigrants in a bind. During the pendency of an application for adjustment of status to lawful permanent resident, it may be difficult to extend *non*immigrant status, because the adjustment application is evidence of the petitioner's intent to immi-grate. See 8 U.S.C. § 1184(b) (requiring certain visa ap-plicants to overcome presumption of immigrant intent in order to receive nonimmigrant status). That assump-tion about intent may be worth rethinking, to the extent that the presumption is not overridden by other provisions, like the one in 8 U.S.C. § 1184(h), which says that "the fact that an alien . . . has otherwise sought permanent residence . . . shall not constitute evidence of [immigrant intent] for purposes of . . . maintaining [L-1] status." Nothing in § 1184(b), however, alters the defini-tion of "lawful immigration status" set forth in 8 C.F.R. § 245.1(d)(1). We note as well that Chaudhry does not contend that he failed to maintain lawful status "for technical reasons," which would be a separate excep-tion under § 1255(c).

Finally, Chaudhry suggests that § 245.1(d)(1) supplies only the meaning of "lawful immigration status" for purposes of § 1255(c), not § 1255(k), which contains the critical, ambiguous phrase "lawful status." Though we are mindful of the dangers of importing terms of art from one statute to another—the confusion in this very case between "unlawful presence" and "unlawful sta-tus" illustrates what can happen—his argument is not

persuasive. First, the precise words "lawful immigra-tion status" do not appear even in § 1255(c), which dis-cusses only "unlawful immigration status," "lawful status," and "lawful nonimmigrant status." Were we to accept Chaudhry's argument, 8 C.F.R. § 245.1(d)(1) would define nothing at all. The plain inference is that the regulatory definition applies to all of these inter-changeable formulations. Second, as explained above, § 1255(k) carves out a limited exception to § 1255(c). Reading these two subsections together, it is most natural to conclude that the "lawful status" contemplated in the latter subsection is the same "lawful status" dis-cussed in the former.

## III

We conclude with a comment on a peculiar aspect of this case that the IJ, the Board, and both parties appear to have overlooked. At some point during the pendency of his first two adjustment applications, Chaudhry re-turned to Pakistan to attend to family business. He re-turned to the United States on March 12, 2005, shortly after the expiration of his nonimmigrant status, at which time he was paroled into the country until March 13, 2006. While we reject the argument that a pending adjustment application conferred "lawful status" on Chaudhry pursuant to 8 C.F.R. § 245.1(d)(1)(ii), it may be that Chaudhry's parolee status tolled the accrual of days without status pursuant to 8 C.F.R. § 245.1(d)(1)(iv).

Chaudhry did not advance this theory before the Board, however. His failure to exhaust the argu-

ment—perhaps occasioned by the government's own failure to identify the controlling regulation in the proceedings below—deprives us of the opportunity to pass on the issue. *Sarmiento v. Holder*, 680 F.3d 799, 803-04 (7th Cir. 2012) ("A party must exhaust all administrative remedies before seeking review by this court, and failure to raise a specific issue before the Board typically forecloses a party from raising it on appeal.").

Accordingly, the petition for review is DENIED.