RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SOFOKLI GAZELI; MIRELA GAZELI aka Mirela Goxhaj,
　　　　　　　　　　　　　　　*Petitioners,*

　　*v.*

JEFFERSON B. SESSION, III, Attorney General,
　　　　　　　　　　　　　　　*Respondent.*

No. 16-3270

On Petition for Review from the
Board of Immigration Appeals.
Nos. A 097 596 483; A 097 596 484.

Decided and Filed:  May 18, 2017

Before:  DAUGHTREY, ROGERS, and COOK, Circuit Judges.

_____

### COUNSEL

_____

**ON BRIEF:**  Marshal E. Hyman, Russell Reid Abrutyn, MARSHAL E. HYMAN & ASSOC.,
PC., Troy, Michigan, for Petitioners.  Carmel A. Morgan, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Respondent.

_____

### OPINION

_____

　　COOK, Circuit Judge.  Facing removal from the United States, Sofokli and Mirela Gazeli
asked an immigration judge (IJ) to approve two sets of applications to adjust their immigration
status.  The IJ concluded that the Gazelis were ineligible for adjustment under their first set of
applications and that it lacked jurisdiction to consider their second.  The Board of Immigration
Appeals (BIA) affirmed.  In their petition for review, the Gazelis raise issues of first impression

regarding the interpretation and validity of two immigration regulations. Because the BIA properly applied federal law, and because the challenged regulations are reasonable interpretations of the Immigration and Nationality Act (INA), we DENY their petition for review.

## I. Background

"Under the Immigration and Nationality Act, an alien can become a permanent resident by obtaining an employment visa. To do so, the alien must complete a three-step process." *Patel v. U.S. Citizenship & Immigration Servs.*, 732 F.3d 633, 634 (6th Cir. 2013) (citations omitted). First, the alien's potential employer must apply for and receive labor certification from the Department of Labor (DOL). *Id.* (citing 8 U.S.C. § 1154(b)(3)(C); 20 C.F.R. § 656.17(a)(1)). Second, that employer must file an I-140 petition for a work visa with the Citizenship and Immigration Services (USCIS). *Id.* (citing 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a)). Third, if the USCIS approves the petition, the alien must then apply to adjust his immigration status. *Id.* (citing 8 U.S.C. § 1255; 8 C.F.R. § 245.2(a)(3)(ii)).

Petitioners are natives and citizens of Albania. In July 2001, Sofokli came to the United States under a B-2 visitor visa, with his wife Mirela following a few months later. Although Sofokli's visa permitted him to stay in the United States only until January 1, 2002, Petitioners remained in the United States without authorization after that date while Sofokli sought an employment visa.

On May 6, 2002, four months after Sofokli's visa expired, his employer applied for labor certification for Sofokli, which the DOL granted on April 15, 2003. His employer then filed an I-140 petition for a work visa for Sofokli on October 24, 2003.

Petitioners applied to adjust their status from visitor to permanent resident the same day,[1] with Mirela filing as her husband's derivative beneficiary. Thereafter, the USCIS granted Petitioners advance parole, which permits an alien who is otherwise inadmissible to leave the United States and reenter at a later date. *See Rais v. Holder*, 768 F.3d 453, 456 n.2 (6th Cir.

---

[1]Federal regulations permit an alien to apply for adjustment concurrently with his employer's work-visa application. 8 C.F.R. § 245.2(a)(2)(i)(B).

2014) (citing *In re Arrabally*, 25 I. & N. Dec. 771, 777 (B.I.A. 2012)). Petitioners left the United States and returned a few months later in April 2004 to await adjudication of their applications.

In February 2005, the USCIS approved the work-visa petition filed by Sofokli's employer. Unfortunately for Petitioners, the USCIS denied their adjustment applications a few weeks later, relying on an INA provision that bars aliens from adjusting their status if they have accrued more than 180 days in the United States without "lawful status." *See* 8 U.S.C. § 1255(k)(2). Following the denial of their applications, Petitioners departed again and were paroled into the United States in 2005. They filed a second set of adjustment applications upon their return, which USCIS denied in September 2006.

A few months later, the Department of Homeland Security served Petitioners with a notice to appear before an IJ, alleging that Petitioners remained in the United States without authorization and were subject to removal. Appearing before the judge, Petitioners denied removability and renewed both their first and second adjustment applications.

The IJ denied Petitioners' request to adjust their status and ordered their removal to Albania. The judge found that Sofokli had accrued more than 180 days out of "lawful status" at the time of his first application. As the judge saw it, Sofokli's lawful status expired on January 1, 2002, yet he did not apply to adjust his status until October 24, 2003. The judge rejected Sofokli's argument that he remained in lawful status by virtue of his employer's pending labor-certification request and work-visa petition. The judge held that she lacked jurisdiction to consider Sofokli's second set of applications. The BIA, acting through a single judge, issued a separate opinion affirming in all respects. Petitioners timely filed a petition for review.

## II. Standard of Review

"Where, as here, the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). We review questions of law de novo, but afford substantial deference to the BIA's interpretation of the INA and accompanying regulations.

*Shewchun v. Holder*, 658 F.3d 557, 561 (6th Cir. 2011) (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)).

## III. Discussion

In their petition for review, the Gazelis assert their eligibility for adjustment under both their first and second sets of adjustment applications. We address each in turn.

## A. Petitioners' First Set of Adjustment Applications

Section 245 of the INA, 8 U.S.C. § 1255, provides the framework governing Petitioners' eligibility to adjust their immigration status. Although the beneficiary of an approved work-visa is generally eligible, § 1255(c) disqualifies aliens who are "in unlawful immigration status" on the date they file their applications or who "failed (other than through no fault of [their] own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(a), (c)(2). This eligibility bar, however, comes with an exception relevant here. Section 1255(k) permits the beneficiary of an approved work-visa petition to adjust his status if he has not accrued more than 180 days out of "lawful status" prior to applying for adjustment. 8 U.S.C. § 1255(k). In effect, subsection (k) acts as a 180-day grace period to subsection (c)'s requirement that an applicant be in lawful status at the time of filing.

Here, Sofokli's visitor visa expired on January 1, 2002. Petitioners filed their first adjustment applications with the USCIS on October 24, 2003, outside of § 1255(k)'s 180-day window. The BIA therefore concluded that they were ineligible for adjustment.

Petitioners' primary argument is that the employer's labor-certification application filed on May 6, 2002, tolled the running of time in unlawful status during its pendency, so that he was in unlawful status for only 125 days.

Petitioners' argument turns on the proper understanding of "lawful status." The operative definition, provided in regulations promulgated by the Attorney General, consists of six categories of lawful status: lawful permanent residency, non-expired or extended non-immigrant status, refugee status, asylee status, valid parole status, or eligibility under the Immigration Nursing Relief Act of 1989. 8 C.F.R. § 1245.1(d)(1). The Attorney General's regulation does

not include a pending labor-certification application, an omission that Petitioners argue renders the regulation an "unreasonably narrow construction" of lawful immigration status not due *Chevron* deference.

Because the INA does not define "lawful immigration status," Congress has not "directly spoken to the question at issue," *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 853 (1984)—here, whether a pending request for labor certification confers lawful status. Furthermore, because Congress authorized the Attorney General to prescribe regulations to govern the grant of status adjustments, 8 U.S.C. § 1255(a), the definition in the regulation controls unless "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

The Attorney General's definition—with its six categories of "lawful" aliens—fits comfortably within the statutory framework. An employer's application for labor certification is only the first step in seeking adjustment of status via an employment visa. *See Patel*, 732 F.3d at 634. Neither an approved labor certification nor an approved work-visa petition confers permanent-resident status; the beneficiary must then apply for adjustment with the Attorney General, who retains discretion to deny the application even if the alien meets the INA's eligibility requirements. *See* 8 U.S.C. § 1255(a); *Ferrans v. Holder*, 612 F.3d 528, 531 (6th Cir. 2010). This framework suggests that only the Attorney General's imprimatur confers lawful immigration status, not the alien's completion of the preliminary steps necessary to apply.

Petitioners counter by pointing out that seeking adjustment of status through an approved work visa often takes more than 180 days to complete. Yet once an employer begins the process, the holder of a B-2 visitor visa may have trouble demonstrating the nonimmigrant intent necessary to extend the visa. *See* 8 U.S.C. §§ 1184(b), 1101(a)(15)(B) (requiring visitor-visa applicants to demonstrate that they "have[] a residence in a foreign country which [they] ha[ve] no intention of abandoning" and are visiting "temporarily for pleasure"). As Petitioners see it, § 1255(k)'s short eligibility window, the difficulty of extending visitor status while the DOL processes a labor certification, and § 1245.1(d)(1)'s definition of lawful status combine to "exclude[] from adjustment of status eligibility the very noncitizens who are going through the

mandatory preliminary steps of applying for adjustment of status." This, according to Petitioners, renders § 1245.1(d)(1)'s categories of "lawful" aliens unreasonably narrow.

We disagree. Congress, not the Attorney General, settled on a 180-day safe-harbor period and required that visitors establish they are in the United States "temporarily for pleasure" before extending a B-2 visitor visa. *See* 8 U.S.C. §§ 1255(k), 1184(b), 1101(a)(15)(B). Petitioners' practicalities argument therefore ignores the fact that, by legislative design, "the B-2 visitor admission is inconsistent with efforts to immigrate." *Matovski v. Gonzales*, 492 F.3d 722, 728 (6th Cir. 2007). Although nothing prohibits B-2 visa holders from adjusting their status, they must satisfy the eligibility requirements that Congress imposed. *See* 8 U.S.C. § 1255(c), (k). Section 1245.1(d)(1) "is a reasonable agency interpretation entitled to our deference." *Chaudhry*, 705 F.3d at 292–93 (upholding 8 C.F.R. § 245.1(d)(1), which is identical to § 1245.1(d)(1)); *Dhuka v. Holder*, 716 F.3d 149, 156–59 (5th Cir. 2013) (same).

Because the pending labor-certification application did not confer "lawful status," we reject Sofokli's argument that he accrued less than 180 days out of status.

Moreover, we lack jurisdiction to consider Petitioners' alternative argument that the DOL's delay in processing Sofokli's labor certification should excuse their failure to file within § 1255(k)'s 180-day grace period. On appeal, Petitioners argue that the DOL's delay in processing Sofokli's labor-certification application is a "technical reason" that excuses their failure to maintain lawful status under 8 U.S.C. § 1255(c). However, despite citing § 1255(c) in their brief below, Petitioners never asked the BIA to excuse their noncompliance with § 1255(k) as a "technical reason." Instead, they argued that "Mr. Gazeli was in lawful status while [his labor-certification application] was pending, after its approval, and while his I-140 petition and concurrently filed adjustment of status application were pending beginning October 24, 2003." Because Petitioners did not properly present their "technical reasons" argument to the BIA, we lack jurisdiction to consider it on appeal. *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005).

## B. Petitioners' Second Set of Adjustment Applications

After the USCIS denied their first set of applications, Petitioners received advance parole, left the United States, and filed a second set of applications upon their return. The USCIS denied

those applications too, and the IJ held that it lacked jurisdiction to adjudicate them in Petitioners' removal proceedings. The BIA affirmed. In their petition for review, the Gazelis maintain that the IJ had jurisdiction. We disagree.

In general, adjustment applications renewed by aliens placed in removal proceedings are subject to the exclusive jurisdiction of the immigration courts. 8 C.F.R. § 1245.2(a)(1)(i). Federal regulations, however, make an exception for "arriving aliens" placed in removal proceedings, whose applications may not be adjudicated in immigration court unless the alien meets certain statutory conditions enumerated in 8 C.F.R. § 1245.2(a)(1)(ii). In relevant part, the regulation provides that, in order for an application to be subject to the jurisdiction of the immigration courts, the arriving alien must have filed the application while in the United States and must have "departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue *the previously filed application* for adjustment of status." *Id.* § 1245.2(a)(1)(ii)(A), (B) (emphasis added).

The BIA concluded that Petitioners' second set of adjustment applications was not "previously filed" because Petitioners filed them after returning from advance parole. On appeal, Petitioners challenge the BIA's holding on two grounds. First, they maintain that the IJ has jurisdiction "under the plain language of 8 C.F.R. § 1245.2(a)(1)(ii)." Second, they argue that § 1245.2(a)(1)(ii) is an impermissible reading of the INA.

(1) Petitioners Do Not Satisfy the Requirements of § 1245.2(a)(1)(ii)

We reject Petitioners' "plain language" argument because it rests on a mistaken reading of the regulation. According to Petitioners, they satisfy the regulation's requirements because they "departed and returned" to the United States to pursue "a previously filed application"— their first set of applications. Under Petitioners' reading, once an alien files a single application before being granted advance parole, § 1245.2(a)(1)(ii) authorizes the immigration judge to consider an unlimited number of applications that the alien might file upon return.

Petitioners' reading is untenable. Subsection (B) of § 1245.2(a)(1)(ii) permits an IJ to consider an arriving alien's adjustment application only if the alien is returning to pursue "*the* previously filed application," not "*a* previously filed application." And subsections (A), (C), and

(D) each use the definite article to describe "the" application over which an immigration judge has jurisdiction. *Id.* § 1245.2(a)(1)(ii)(A), (C), (D). Section 1245.2(a)(1)(ii)'s consistent use of the definite article makes apparent that it grants jurisdiction over a specific application: "the previously filed application" that the alien is returning to pursue. *See Rais v. Holder*, 518 F. App'x 476, 477 (6th Cir. 2013) (per curiam); *Brito v. Mukasey*, 521 F.3d 160, 167–68 (2d Cir. 2008).

We turn next to Petitioners' argument that § 1245.2(a)(1)(ii) is invalid under *Chevron*.

(2) Section 1245.2(a)(1)(ii) is a Permissible Reading of the INA

Although the validity of § 1245.2(a)(1)(ii) is an issue of first impression in this circuit, the Eleventh Circuit has upheld the regulation in a published decision. *Scheerer v. United States Attorney Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008). We agree that the regulation is an appropriate exercise of the Attorney General's authority to implement the INA.

Petitioners argue that § 1245.2(a)(1)(ii) "conflicts with Congress's clear intent to provide parolees equal access to the adjustment of status process." They glean this intent from 8 U.S.C. § 1255(a), which provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence, if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Section 1255(a) plainly grants paroled aliens the right to apply for adjustment of status. And because § 1255(a) includes no language excepting arriving aliens in removal proceedings, multiple circuits have held that arriving aliens in removal proceedings must be permitted to seek adjustment. *See Scheerer v. Attorney Gen.*, 445 F.3d 1311, 1320–22 (11th Cir. 2006); *Bona v. Gonzalez*, 425 F.3d 663, 670–71 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005); *Succar v. Ashcroft*, 394 F.3d 8, 30 (1st Cir. 2005). The question we must decide is whether, by giving the USCIS—as opposed to immigration judges—exclusive jurisdiction over

applications filed by arriving aliens in removal proceedings, § 1245.2(a)(1)(ii) impermissibly interferes with that right.

In this case, it does not.  Although § 1255(a) may require that paroled aliens in removal proceedings be afforded a forum to adjudicate their adjustment-of-status applications—an issue we need not decide—nothing in that section or elsewhere dictates a particular forum.  To the contrary, "Congress has divided adjudication functions between DOJ and DHS and has authorized those departments to fill the gap as to specific application procedures." *Scheerer*, 513 F.3d at 1252.  Section 1245.2(a)(1)(ii) does just that by charging immigration courts with jurisdiction over an arriving alien's adjustment application only if it was "previously filed"; otherwise, jurisdiction lies exclusively with the USCIS.  We agree with the Eleventh Circuit that § 1245.2(a)(1)(ii) "appears fully consistent with the broader statutory framework governing adjustment applications." *Scheerer*, 513 F.3d at 1252.

Petitioners argue that § 1245.2(a)(1)(ii) impermissibly "exclud[es] an entire category of applicants from a form of relief explicitly made available to them by statute."  Although Petitioners never say so directly, they apparently believe that § 1255(a) requires that immigration courts—not the USCIS—adjudicate adjustment applications filed by arriving aliens in removal proceedings.  But as already explained, § 1255(a) is silent on the division of labor between immigration courts and the USCIS.  Accordingly, the Attorney General's decision to channel applications between the two does not deny Petitioners any relief "made available to them by statute."  Petitioners applied to adjust their status twice, and the USCIS adjudicated both sets of applications.  Section 1255(a) requires no more.  *See, e.g.*, *Succar*, 394 F.3d at 26–30.

Petitioners maintain that the BIA's decision in *In re Arrabally* compels a different result, but they are mistaken.  *In re Arrabally* addressed the definition of "departure" in an INA provision that bars the entry of any alien who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure." *See* 8 U.S.C. § 1182(a)(9)(B)(ii).  The BIA held that "an alien who has left and returned to the United States under a grant of advance parole has not made a 'departure'" that triggers inadmissibility. *In re Arrabally*, 25 I. & N. Dec. at 779.  The BIA recognized that considering advance parole to be a "departure" would "defeat[] the regulatory purpose of

preserving advance parolees' eligibility for adjustment of status." *Id.* Petitioners read *In re Arrabally* broadly to say that the government may not "use advance parole as a trap to deprive the noncitizen of all of the rights that he previously had."

Section 1245.2(a)(1)(ii), however, has no bearing on the admissibility of aliens returning from advance parole, nor does it affect a parolee's eligibility for adjustment of status. It was Sofokli's failure to file within § 1255(k)'s 180-day grace period, not Petitioners' travel plans, that rendered them ineligible for adjustment. Accordingly, § 1245.2(a)(1)(ii) does not act as a "trap to deprive [Petitioners] of all of the rights that [they] previously had."

Because § 1245.2(a)(1)(ii) is not "arbitrary, capricious, or manifestly contrary to the statute," we join the Eleventh Circuit and uphold the regulation as a valid exercise of the Attorney General's authority to implement the INA. *See Scheerer*, 513 F.3d at 1252.

## IV. CONCLUSION

For these reasons, we DENY the petition for review.