**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| XIAO LU MA, *Petitioner*, v. JEFFERSON B. SESSIONS III, Attorney General, *Respondent*. | No. 15-73520<br><br>Agency No. A088-601-792<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 11, 2018
San Francisco, California

Filed November 2, 2018

Before: Eugene E. Siler,* Richard A. Paez,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Paez

---

\* The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Xiao Lu Ma's petition for review of a decision of the Board of Immigration Appeals that found Ma ineligible for status adjustment, holding that a grant of regulatory employment authorization under 8 C.F.R. § 274a.12(b)(20) does not confer lawful immigration status for purposes of establishing eligibility for status adjustment under 8 U.S.C. § 1255(k)(2).

The governing statute, 8 U.S.C. § 1255(k) allows petitioners to apply for adjustment of status as long as the petitioners, among other requirements, "ha[ve] not, for an aggregate period exceeding 180 days . . . failed to maintain, continuously, a lawful status." 8 U.S.C. § 1255(k)(2)(A).

Ma was the beneficiary of an H-1B specialty occupation visa. His employer filed an extension of that visa, but it was denied, and his employer failed to file an application for status adjustment within 180 days of the expiration of his H-1B visa. The United States Citizenship and Immigration Services denied Ma's application to adjust status, concluding that Ma had engaged in unauthorized employment for well over the 180 days permitted by 8 U.S.C. § 1255(k)(2)(A).

The Department of Homeland Security initiated removal proceedings for having overstayed his visa, and Ma requested adjustment of status. Counsel for Ma argued that

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

8 C.F.R. § 274a.12(b)(20), which authorizes petitioners to "continue employment with the same employers for a period not to exceed 240 days beginning on the date of the expiration of the authorized period of stay" while a timely application for an extension is pending, conferred lawful status on Ma for the period between when his H-1B visa expired, and when his application for a visa extension was first denied. Under this theory, Ma would have been without lawful status for only 174 days before he applied for adjustment of status, which would fall within 8 U.S.C. § 1255(k)'s 180-day threshold. The immigration judge and the BIA rejected this argument, concluding that employment authorization under 8 C.F.R. § 274a.12(b)(20) does not confer lawful status for purposes of adjustment of status. Ma was ordered removed to the People's Republic of China and he timely petitioned for review.

As an initial matter, the panel concluded that *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) deference was not warranted here because the BIA offered no explanation for its conclusion and failed to cite any supporting authority.

Addressing what constitutes "lawful status" within the meaning of 8 U.S.C. § 1255, the panel noted that the statute was silent as to this issue, but that 8 C.F.R. § 1245.1(d)(1) defines "lawful immigration status" in 8 U.S.C. § 1255(c)(2) as including only six categories of individuals. The panel held that 8 C.F.R. § 1245.1(d)(1) is entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), explaining that the definition of lawful status was a reasonable agency interpretation because it fits within the statutory framework, which restricts the availability of adjustment for those whose lawful status had elapsed and provides a limited grace period through 8 U.S.C.

§ 1255(k). The panel also noted that to hold otherwise would render 8 U.S.C. § 1255(k) superfluous.

The panel further held that 8 C.F.R. § 274a.12(b)(20)'s grant of employment authorization does not fall within one of the six categories enumerated in 8 C.F.R. § 1245.1(d)(1). The panel observed that, of the six categories, the only one with any relevance to this case is 8 C.F.R. § 1245.1(d)(1)(ii), which extends lawful status to persons admitted "in nonimmigrant status as defined in [8 U.S.C. § 1101(a)(15)] whose initial period of admission has not expired or whose nonimmigrant status has been extended." However, the panel explained that it was undisputed that Ma's application to extend his visa was denied at all levels of review and that his visa expired long before he applied for adjustment of status. Moreover, the panel explained that 8 C.F.R. § 1245.1(d)(1)(ii) clearly limits its recognition of employment authorization to visas (or visa extensions) obtained under 8 U.S.C. § 1101(a)(15), which does not include employment authorization under 8 C.F.R. § 274a.12(b)(20).

Observing that the Immigration & Nationality Act's opaque and, at times, inflexible requirements inevitably produce painful outcomes, the panel noted that Ma had had every reason to believe he was in compliance with the law. The panel also noted that Ma had excelled in his job, had settled into the role of caring for his parents (both of whom were forced to flee China), and that removal would bar Ma from returning to this country for ten years. However, the panel concluded that these considerations, as moving as they may be, do not factor into the calculation for status adjustment and that, in light of the law, the panel was left with no choice but to deny Ma's petition for review.

**COUNSEL**

Jean Wang (argued), Wang Law Office PLLC, Flushing, New York; Don P. Chairez, Law Offices of Don Chairez, Long Beach, California; for Petitioner.

Robert Dale Tennyson Jr. (argued), Trial Attorney; Terri J. Scadron and Carl McIntyre, Assistant Directors; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

PAEZ, Circuit Judge:

Navigating the labyrinth that is the worker visa, employment authorization, and status adjustment process under the Immigration and Naturalization Act ("INA") is not for the faint of heart. So technical and so complex are the INA's requirements that unlucky petitioners may find themselves in removal proceedings without ever realizing that their status was in jeopardy to begin with. As a result, avoiding removal often hinges on the skill and knowledge of one's employers and their lawyers, whose hands—like those of Ariadne's—may or may not hold the red thread out.

Xiao Ma, the beneficiary of an H-1B visa, petitions for review of his final order of removal. Ma's employer filed for an extension of his H-1B visa, but it was denied, and his employer failed to file an application for status adjustment within 180 days of the expiration of his H-1B visa. Because the application to extend the H-1B visa was denied, Ma was without lawful status in this country for 331 days before he

applied to adjust his status—well over the 180 days permitted by 8 U.S.C. § 1255(k)(2)(A), which would have otherwise protected him from removal. He was, however, legally authorized to work in the country during the months between the expiration of his H-1B visa and the denial of his application for an H-1B extension pursuant to 8 C.F.R. § 274a.12(b)(20). Nonetheless, because 8 C.F.R. § 1245.1(d) does not recognize regulatory employment authorization as conferring lawful immigration status for purposes of status adjustment under 8 U.S.C. § 1255(k)(2)(A), the Board of Immigration Appeals ("BIA") correctly concluded that Ma is ineligible for status adjustment. We therefore must deny Ma's petition for review.

## I.

Nowhere is the complexity of the INA's worker visa, employment authorization, and status adjustment process more evident than in the facts undergirding Ma's removal proceedings.

In 2003, Ma, a citizen of the People's Republic of China with a bachelor's degree in computer science and technology, accepted a job offer from the Law Offices of Qiang Ma ("Ma Law"), a small law firm based in Alhambra, California, for the position of computer analyst. Ma Law successfully applied for an H-1B specialty occupation visa on Ma's behalf. The visa was valid from September 10, 2003 to August 4, 2006. At some point in July 2006, shortly before the visa was set to expire, Ma Law applied for an extension of Ma's H-1B status by filing a form I-129, Petition for a Nonimmigrant Worker. Half a year later, on January 9, 2007, the Director of the California Service Center of the United States Citizenship and Immigration Services ("USCIS") denied Ma Law's I-129 petition,

because Ma Law had failed to submit "suitable evidence to justify that [Ma's] continued duties would be in line with that of a specialty occupation worker."[1]

Ma Law appealed the Director's determination to the Administrative Appeals Office ("AAO") on February 2, 2007, a month after the Director denied his petition. While that appeal was pending, Ma Law filed three concurrent applications on Ma's behalf on July 2, 2007: (1) an I-485 application for adjustment of status to permanent resident; (2) an I-140 petition for an alien worker; and (3) an I-765 application for employment authorization with the Nebraska Service Center. The USCIS approved the I-765 application for employment authorization on September 26, 2007. By this point, Ma had been working in the country without a valid visa for 417 days.

On January 9, 2008, the AAO dismissed Ma Law's appeal of the Director's decision to deny its application to extend Ma's H-1B visa. Citing that dismissal, the Director of the Nebraska Service Center denied Ma Law's I-485 application to adjust Ma's status on September 25, 2009.[2] The Director concluded that because Ma had been "engaged

---

[1] The USCIS specifically requested that Ma Law provide evidence demonstrating that there would be sufficient qualifying work for Ma to warrant extending his H-1B visa. When Ma Law failed to provide a satisfactory response, the Director denied the I-129 petition.

[2] The USCIS initially denied Ma Law's I-485 application on February 24, 2009, based on its denial of Ma Law's I-140 Immigrant Petition for Alien Worker six days before. The Director, however, granted Ma Law's request to reopen the adverse I-140 decision and approved the petition on April 2, 2009. This necessitated reopening the I-485 proceedings, which the Director did on April 10, 2009.

in unauthorized employment" for 418 days[3]—well over the 180 days permitted by 8 U.S.C. § 1255(k)(2)—he was ineligible for status adjustment.  The Director also concluded that Ma was ineligible to be grandfathered in as the beneficiary of an immigrant visa petition or labor certification application filed on or before April 30, 2001, because no one had filed a visa petition on his behalf on or before April 30, 2001.  Ma Law filed a motion to reopen the decision on October 29, 2009, which the USCIS denied on December 29, 2009.  Ma Law's appeal of the denial was dismissed on January 29, 2010.

---

[3] The Director relied on section 1255(k)(2)(B) (unauthorized employment) to deny Ma Law's application.  In contrast, the IJ and the BIA relied on section 1255(k)(2)(A) (failure to maintain lawful status) to deny Ma's request to adjust status during his removal proceedings.  The Director's calculation of the dates, however, appears to be incorrect in two ways.  First, 8 C.F.R. § 274a.12(b)(20) authorizes H-1B visa holders like Ma whose visas have expired but who have timely filed for an extension to "continue employment with the same employer" for up to 240 days or until a service center director denies the application for an extension, whichever comes first.  In which case, Ma worked without valid employment authorization from January 9, 2007, the day his application for an extension was denied, until September 26, 2007, the day his I-765 application was approved—a period of 260 days.  Second, even if the Director correctly excluded section 274a.12(b)(20)'s period of valid employment authorization from his calculation—which he did not—Ma's H-1B visa was valid up to and including August 4, 2006, which meant that Ma was without status beginning August 5, 2006.  This results in a period of 417 days, not 418 days.  These errors only highlight the difficulties facing petitioners who wish to apply for status adjustment and who are expected to track relevant dates as closely as Copernicus once tracked the movements of the sun.  *See* Nicolaus Copernicus, *De Revolutionibus Orbium Coelestium* [On the Revolutions of the Heavenly Spheres] (1543).

The Department of Homeland Security ("DHS") initiated removal proceedings against Ma on May 3, 2010 for overstaying his H-1B visa. That year, Ma left Ma Law and joined MGM Resorts Corporation as a senior business analyst, having successfully earned his MBA at San Diego State University two years prior. At his hearing on February 3, 2014, Ma denied that he had remained in the United States past August 4, 2006 without authorization from the Immigration and Naturalization Service ("INS") or DHS.[4] He also requested adjustment of status as relief from removal.

Counsel for Ma argued at the removal hearing that 8 C.F.R. § 274a.12(b)(20), which authorizes petitioners to "continue employment with the same employers for a period not to exceed 240 days beginning on the date of the expiration of the authorized period of stay" while a timely application for an extension is pending, conferred lawful status on Ma for the period between August 4, 2006, when his H-1B visa expired, and January 9, 2007, when the Director first denied Ma's I-129 application for an extension. Under this theory, Ma would have been without lawful status for only 174 days before he applied for adjustment of status, which would fall within 8 U.S.C. § 1255(k)'s 180-day threshold. The IJ rejected Ma's argument. Relying on *Matter of Rotimi*, 24 I. & N. Dec. 567 (BIA 2008), the IJ concluded that employment authorization was not the same as lawful status and that even though Ma had maintained valid employment up to January 9, 2007, that did not mean

---

[4] Ma admitted the other allegations contained in his Notice to Appear, which were (1) he was not a citizen or national of the United States; (2) he was a native and citizen of the People's Republic of China; and (3) he was admitted to the United States as an H-1B worker "for a temporary period not to exceed August 4, 2006."

that Ma had "maintained a lawful nonimmigrant status while the request for employment authorization was pending." By the IJ's calculations, Ma had been living in the United States without lawful status from August 5, 2006, when his H-1B visa expired, to July 2, 2007, when he filed his application for status adjustment with the USCIS—a period of 331 days.[5] As a result, the IJ denied Ma's application for adjustment of status.

The IJ further concluded that although Ma's parents were granted political asylum in 2012 for dissident activity, Ma was over 21 years old at the time his parents' asylum applications were filed. As a result, Ma was ineligible for asylum as a dependent. Lastly, the IJ concluded that Ma was ineligible to be grandfathered in as the beneficiary of an immigrant visa petition or labor certification application filed on or before April 30, 2001.

The removal hearing revealed that Ma was an exemplary employee at MGM resorts and had recently been voted employee of the year for his work as a senior business analyst. Moreover, as the only child in his family, Ma had been the sole source of support for his parents—neither of whom speak English—ever since they were granted asylum in the United States. Removal would bar Ma from returning to this country to reunite with his parents for at least a decade. *See* 8 U.S.C. § 1182(a)(9)(B). Recognizing the "sympathetic" facts in Ma's case, the IJ nonetheless concluded that his hands were tied by the "frustrations and

---

[5] Both the IJ and the BIA correctly used July 2, 2007 as the end date when calculating the time Ma was without lawful status. *See Gazeli v. Session*, 856 F.3d 1101, 1105 (6th Cir. 2017) ("Section 1255(k) permits the beneficiary of an approved work-visa petition to adjust his status if he has not accrued more than 180 days out of 'lawful status' prior to applying for adjustment.").

technicalities concerning the very technical requirements for applying for adjustment of status." Thus, even though there was evidence that Ma was the recipient of "numerous approvals of requests for employment authorization from USCIS continuing to [the date of the removal hearing]," the IJ ordered Ma removed to the People's Republic of China because 8 C.F.R. § 274a.12(b)(20)'s grant of employment authorization did not confer lawful status for purposes of status adjustment under 8 U.S.C. § 1255(k)(2)(A).

The BIA dismissed Ma's appeal from the IJ's order. The BIA agreed with the IJ that employment authorization under 8 C.F.R. § 274a.12(b)(20) does not confer lawful nonimmigrant status for purposes of status adjustment. Accordingly, the BIA concluded that Ma was without lawful status from August 5, 2006 to July 2, 2007, a period of over 180 days, which precluded Ma from establishing his eligibility for adjustment of status.

Ma timely petitioned for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's final order of removal. "We review the BIA's determination of issues of law *de novo*, deferring to the BIA's interpretation of an immigration statute where that interpretation is 'based on a permissible construction of the statute.'" *Rebilas v. Mukasey*, 527 F.3d 783, 785 (9th Cir. 2008) (quoting *Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005)).

## III.

The governing statute, 8 U.S.C. § 1255(k) allows petitioners to apply for adjustment of status under section

1255(a) as long as the petitioners, among other requirements, "ha[ve] not, for an aggregate period exceeding 180 days— (A) failed to maintain, continuously, a lawful status." The question presented on this appeal is a narrow one: does 8 C.F.R. § 274a.12(b)(20)'s grant of employment authorization confer lawful nonimmigrant status on petitioners for purposes of status adjustment under 8 U.S.C. § 1255(k)(2)? We hold it does not.

## A.

As an initial matter, we conclude that *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) deference—which we ordinarily afford the BIA's unpublished decisions—is not warranted here. *See Saldivar v. Sessions*, 877 F.3d 812, 815 n.3 (9th Cir. 2017). "Under *Skidmore*, the measure of deference afforded to the agency 'depends upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Uppal v. Holder*, 605 F.3d 712, 715 (9th Cir. 2010) (quoting *Skidmore*, 323 U.S. at 140). Although the BIA concluded that employment authorization under 8 C.F.R. § 274.12(b)(20) is not commensurate with "lawful nonimmigrant status" for status adjustment under 8 U.S.C. § 1255(k), it offered no explanation for its conclusion and failed to cite to any supporting authority. Cursory conclusions are neither persuasive nor entitled to deference. *See Dir., OWCP v. Greenwich Collieries*, 512 U.S. 267, 277 (1994) (concluding that the Court's "cursory conclusion" in a different case "does not warrant the same level of deference we typically give our precedents"). We therefore decline to defer to the BIA's interpretation of 8 U.S.C. § 1255, and address for the

first time whether 8 C.F.R. § 274.12(b)(20) confers lawful status on petitioners seeking adjustment of status.[6]

## B.

Petitioners seeking to adjust their status in this country must first understand the general framework of 8 U.S.C. § 1255. Generally speaking, the Attorney General of the United States has the discretionary authority to adjust a petitioner's status to lawful permanent resident provided that "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the

---

[6] To the extent the BIA intended to rely on the IJ's opinion "as a statement of reasons, we look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Kozulin v. I.N.S.*, 218 F.3d 1112, 1115 (9th Cir. 2000). But the IJ's decision here is similarly unpersuasive. Citing only *Matter of Rotimi*, 24 I. & N. Dec. 567 (BIA 2008), the IJ concluded that work authorization could not be equivalent to lawful status. *Matter of Rotimi*, however, addressed only the meaning of "lawfully *resided* continuously" in the context of waiver of inadmissibility under section 212(h) of the INA, 8 U.S.C. § 1182(h). 24 I. & N. Dec. at 568 (emphasis added). Although *Rotimi* stated in dicta that "work authorization is not equivalent to a lawful status; nor is it necessarily reflective of a right to lawfully be or remain in this country," *id.* at 578, the BIA explicitly limited its holding in *Rotimi* to "whether an applicant for privileges or benefits is deemed to have 'lawfully resided' here for purposes of [waiver of inadmissibility]." *Id.* at 577. *Rotimi* thus has little bearing on this case, which revolves around whether employment authorization under a specific regulation confers lawful status (not lawful residence) on petitioners who have overstayed their valid H-1B visas for purposes of status adjustment. *See El Badrawi v. United States*, 787 F. Supp. 2d 204, 227–28 (D. Conn. 2011) (concluding that *Rotimi* was inapplicable because it "did not involve a removal proceeding; it did not involve an H-1B visa holder; and, it did not involve the regulation at issue here").

time his application is filed." 8 U.S.C. § 1255(a). Certain classes of petitioners, however, are ineligible for status adjustment. *See id.* § 1255(c). These include petitioners who are "in unlawful immigration status on the date of filing the application for adjustment of status or who ha[ve] failed (other than through no fault of [their] own or for technical reasons) to maintain continuously a lawful status since entry into the United States." *Id.* § 1255(c)(2).

To the extent that section 1255(c) acts as an exception to the general rule laid out in section 1255(a), section 1255(k) acts as an exception to section 1255(c)'s continuous lawful status requirement. Under section 1255(k), beneficiaries of "an approved work-visa petition," such as an H-1B visa, may adjust their status even if they have failed to maintain continuous lawful status as long as they have "not accrued more than 180 days out of 'lawful status' prior to applying for adjustment." *Gazeli v. Session*, 856 F.3d 1101, 1105 (6th Cir. 2017) (quoting 8 U.S.C. § 1255(k)); *see also Yong Dong Kim v. Holder*, 737 F.3d 1181, 1186 (7th Cir. 2013) ("For immigrants seeking an employment-based adjustment of status, as Kim was seeking here, the statute provides an exception to the requirement of continuous lawful status." (citing 8 U.S.C. § 1255(k))). Put simply, qualifying applicants like Ma are not barred by § 1255(c) from applying to adjust their status under § 1255(a) as long as they meet the criteria of § 1255(k), including not staying in this country for over 180 days without some type of lawful status. *See* 8 U.S.C. § 1255(k)(2)(A).

The question, then, is what constitutes "lawful status" within the meaning of 8 U.S.C. § 1255. As to this, the statute is silent. Neither section 1255(k)(2)(A) nor section 1255(c) defines "lawful status." In response to this gap, the INS

promulgated a regulation, 8 C.F.R. § 1245.1(d)(1),[7] which defines "lawful immigration status"[8] in 8 U.S.C. § 1255(c)(2) as including only six categories of individuals.[9] Because Congress did not define "lawful immigration status," the agency's promulgated interpretation of the term is entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), unless the

---

[7] This regulation is identical to 8 C.F.R. § 245.1(d)(1). While section 1245.1(d)(1) applies to the Executive Office for Immigration Review in the Department of Justice, section 245.1(d)(1) applies to the immigration agencies in the DHS. They provide the same guidance to different agencies as to the definition of "lawful immigration status" for the "purposes of [INA] section 245(c)(2) [or 8 U.S.C. § 1225(c)(2)]." *Compare* 8 C.F.R. 1245.1(d)(1) *with* 8 C.F.R. § 245.1(d)(1); *see also Scheerer v. U.S. Att'y. Gen.*, 445 F.3d 1311, 1319 n.13 (11th Cir. 2006) (explaining regulatory history).

[8] Although 8 U.S.C. § 1255 does not use the term "lawful immigration status," the "plain inference is that the regulatory definition applies to all of these interchangeable formulations"—"unlawful immigration status," "lawful status," and "lawful nonimmigrant status." *Chaudhry v. Holder*, 705 F.3d 289, 293 (7th Cir. 2013). We decline to read section 1245.1(d)(1) to "define nothing at all." *Id.* Furthermore, although the regulation only mentions 8 U.S.C. § 1255(c)(2) and not 8 U.S.C. § 1255(k), we agree with the Seventh Circuit that "it is most natural to conclude that the 'lawful status' contemplated in the latter subsection is the same 'lawful status' discussed in the former." *Id.*

[9] The six categories are (1) lawful permanent residents; (2) nonimmigrants admitted under 8 U.S.C. § 1101(a)(15) whose statuses either have been extended or have not expired; (3) refugees whose statuses have not been revoked; (4) asylees whose statuses have not been revoked; (5) parolees whose statuses have not expired, been revoked, or been terminated; and (6) persons who fall within the purview of the Immigration Nursing Relief Act of 1989 and who have filed their applications for adjustment of status on or before October 17, 1991. 8 C.F.R. § 1245.1(d)(1).

interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

The parties did not initially address whether this regulation is entitled to *Chevron* deference. After the case was submitted for a decision, we directed the parties to file supplemental briefs addressing whether section 1245.1(d)(1) is entitled to *Chevron* deference. The government presented compelling arguments based on the statutory framework and regulatory history.[10] Congress authorized the Attorney General to prescribe regulations to govern the grant of status adjustments, 8 U.S.C. § 1255(a), and the Attorney General's definition restricts lawful status, for the purpose of adjustment, to six categories. 8 C.F.R. § 1245.1(d)(1). This is a reasonable agency interpretation because it fits within the framework, which restricts the availability of adjustment for those whose lawful status had elapsed and provides a limited grace period through section 1255(k). To hold otherwise would render section 1255(k) superfluous. Accordingly, we hold that section 1245.1(d)(1) is entitled to *Chevron* deference and controls.[11] We next address whether section 274a.12(b)(20)'s grant of employment authorization

---

[10] Ma's supplemental brief confuses the issue and argues instead that 8 C.F.R. § 1245.1(d)(1) is irrelevant to the analysis. To the extent Ma argues that the regulation 8 C.F.R. § 274a.12(b) is entitled to deference under *Auer v. Robbins*, the argument is off point and is not persuasive. 519 U.S. 452 (1997).

[11] In doing so, we join at least two of our sister circuits who have also held that 8 C.F.R. § 1245.1(d)(1) or 8 C.F.R. § 245.1(d)(1) is entitled to *Chevron* deference. *See Gazeli v. Sessions*, 856 F.3d 1101 (6th Cir. 2017); *Chaudhry v. Holder*, 705 F.3d 289 (7th Cir. 2013); *see also Dhuka v. Holder*, 716 F.3d 149, 158–59 (5th Cir. 2013).

falls within one of the six enumerated categories.**[12]**   We conclude it does not.

Of the six categories, only the second has any relevance to this case.  Section 1245.1(d)(1)(ii) clearly extends lawful status to persons admitted "in nonimmigrant status as defined in section 101(a)(15) of the [INA] whose initial period of admission has not expired or whose nonimmigrant status has been extended."**[13]**  It is undisputed, however, that Ma Law's application to extend Ma's H-1B visa was ultimately denied at all levels of review.  It is also undisputed that Ma's H-1B visa expired long before he applied for adjustment of status.   Moreover, section 1245.1(d)(1)(ii) clearly limits its recognition of employment authorization to visas (or visa extensions) obtained under 8 U.S.C. § 1101(a)(15), which does not include employment authorization under 8 C.F.R. § 274a.12(b)(20).

The law, then, is clear: While nonimmigrant workers like Ma may legally continue working in this country for up to 240 days while they wait to hear back from the USCIS on their extension applications, they do not have lawful status during this period of time for purposes of status

---

**[12]** Section 1245.1(d)(1)'s six categories are clearly exclusive and not illustrative.  *See* 8 C.F.R. § 1245.1(d)(1) (explaining that "[f]or purposes of section 245(c)(2) of the [INA], the term 'lawful immigration status' will *only* describe the immigration status of an individual who" falls within the six following categories (emphasis added)).

**[13]** Section 101(a)(15) of the INA, or 8 U.S.C. § 1101(a)(15), recognizes H-1B visa holders like Ma as one of the "classes of nonimmigrant aliens."  8 U.S.C. § 1101(a)(15)(H).

adjustment.**[14]**  The margin for error under 8 U.S.C. § 1255(k) is very slim.  Had Ma's employer filed the I-485 application for status adjustment shortly after the I-129 petition was denied instead of waiting for over five months, Ma would likely be within the 180-day grace period.  Alternatively, if Ma's employer had filed the I-129 petition for an extension months before his H-1B visa was set to expire, rather than weeks before, fewer days would have elapsed between the denial of the I-129 petition and the expiration of his H-1B visa, which would have saved Ma precious days from counting towards the 180-day threshold.  Instead, the delays in filing mean that Ma was in this country for well over 180 days without lawful status before Ma Law applied for status adjustment on his behalf.

## IV.

The INA's opaque and, at times, inflexible requirements inevitably produce painful outcomes.  Ma had every reason to believe that he was in compliance with the law.  No doubt, he expected that his employer's application to extend his H-1B visa would be granted, and when it was not, he likely thought his appeal would be successful.  When his separate application for employment authorization was later granted in 2007, there was even less reason to think that he would be at risk of removal.  In the decade since, Ma has excelled at his job and settled into the role of caring for his parents, both of whom were forced to flee China in 2012.  Removal would

---

**[14]** One exception to this, which Ma never raised before the agency, is 8 C.F.R. § 1245.1(d)(2)(ii)'s "technical violation" exception to the 180-day threshold.  Section 1245.1(d)(2)(ii) provides that petitioners may nonetheless satisfy the continuous lawful presence requirement for status adjustment if their failure to meet the 180-day grace period is the result of a "technical violation" for which they are not responsible.

bar Ma from returning to this country—and his parents—for ten years.

But these considerations, as moving as they may be, do not factor into the calculation for status adjustment. In light of the law, we are left with no choice but to deny Ma's petition for review.[15]

**PETITION DENIED.**

---

[15] As discussed before the IJ, however, Ma may be eligible for an unlawful presence waiver (Form I-601A) based on hardship to his parents. The government indicated before the IJ that it was open to the possibility of an I-601A waiver, because Ma has a valid I-140 and a willing employer to serve as his sponsor.