**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| HAIM ATTIAS, *Plaintiff-Appellant*, v. KRISTINE R. CRANDALL, Acting Center Director of Nebraska Service Center, U.S. Citizenship and Immigration Services, *Defendant-Appellee.* | No. 18-56629 D.C. No. 2:18-cv-02334-DMG-JC OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted February 14, 2020
Pasadena, California

Filed July 30, 2020

Before: Jay S. Bybee and Daniel P. Collins, Circuit
Judges, and Barry Ted Moskowitz,[*] District Judge.

Opinion by Judge Bybee

---

[*] The Honorable Barry Ted Moskowitz, United States District Judge
for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Immigration

Affirming the district court's grant of summary judgment to the United States Citizenship and Immigration Services (USCIS), the panel held that Haim Attias was ineligible for adjustment of status to lawful-permanent-resident status because he failed to establish that his lapse in lawful immigration status was "through no fault of his own or for technical reasons."

Under 8 U.S.C. § 1255(c)(2), an alien is barred from adjusting status if he "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." As relevant here, an implementing regulation, 8 C.F.R. § 245.1(d)(2)(ii), interprets the phrase, "other than through no fault of his own or for technical reasons," to mean a "technical violation resulting from inaction of [USCIS]." Also as relevant here, only a lapse in status exceeding 180 days will preclude adjustment.

Attias was granted a B-1 employment visa, and the day before the visa expired, he applied for an extension of the visa. More than a year later, USCIS denied the extension. Attias had also filed an application for adjustment of status based on his employer's petition for an immigrant visa on his behalf. After Attias's visa extension was denied, USCIS denied the adjustment application on the ground that he had

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

failed to maintain valid legal status for a period of over 180 days.

The district court agreed with USCIS, relying on USCIS's *Policy Manual*, which interprets 8 C.F.R. § 245.1(d)(2)(ii) to mean that if an application for a visa extension is ultimately denied, an alien's legal status lapses on the visa's expiration date, and no "technical violation" resulting from USCIS inaction has occurred.

The panel considered whether 8 C.F.R. § 245.1(d)(2)(ii) is "genuinely ambiguous" such that the issue of deference must be considered. Examining the language of the regulation, the panel concluded that a "technical violation" occurs only if the violation is a consequence of USCIS's inaction on a pending application; if the violation is caused by anything within the alien's control, such as substantive ineligibility for an extension of lawful status, there is no "technical violation." Addressing the scenario where, as here, an alien claims that a lapse in status was caused by USCIS's inaction on an application to extend lawful status, the panel thus concluded that a "technical violation" occurs only if the alien's application to maintain lawful status is ultimately granted.

Because the panel concluded that this is the only way the regulation can be read, it concluded that the text is not "genuinely ambiguous," and thus, the panel concluded that it need not grant *Auer* deference to USCIS's interpretation of the regulation. However, the panel noted that it would hold USCIS's interpretation to be reasonable if it were to reach the issue of deference.

With respect to Attias, the panel concluded that his unlawful status resulted from his failure to demonstrate entitlement to an extension of his B-1 status, meaning that the lapse was not excused as having occurred "through no fault of his own or for technical reasons." Moreover, because the lapse exceeded 180 days, the panel concluded that Attias was ineligible of adjustment of status.

## COUNSEL

Jonathan R. Sturman (argued) and David M. Sturman, Law Office of David M. Sturman APC, Encino, California, for Plaintiff-Appellant.

Elizabeth D. Kurlan (argued) and Daniel P. Chung, Trial Attorneys; Samuel P. Go, Senior Litigation Counsel; Glenn M. Girdharry, Assistant Director; William C. Peachey, Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

## OPINION

BYBEE, Circuit Judge:

The United States Citizenship and Immigration Services (USCIS) denied Appellant Haim Attias's application for lawful-permanent-resident status. USCIS found that Attias had failed to continuously maintain lawful status prior to the filing of his application, rendering him ineligible for an adjustment in status. *See* 8 U.S.C. § 1255(c). Attias filed

suit, claiming that his lapse in lawful status is excused because the lapse occurred "through no fault of his own or for technical reasons." *Id.* Thus, Attias contends that USCIS's decision should be "set aside" under the Administrative Procedure Act (APA) because it is "not in accordance with law." 5 U.S.C. § 706(2). The district court disagreed and granted summary judgment to USCIS. We affirm.

## I.  BACKGROUND AND PROCEEDINGS

A. *Statute, Regulations, and USCIS Guidance*

After being lawfully "admitted or paroled into the United States," an alien's status "may be adjusted" to lawful permanent resident if certain conditions are met. 8 U.S.C. § 1255(a). But an alien is categorically prohibited from obtaining an adjustment of status if the alien falls into one of eight categories enumerated in 8 U.S.C. § 1255(c). The relevant category for our purposes is the second one. Under that provision, an alien is barred from adjusting status if the alien "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." *Id.* § 1255(c)(2). In other words, an alien is ineligible for lawful-permanent-resident status if the alien's lawful status has lapsed at any point since entering the country, unless the alien demonstrates the lapse occurred "through no fault of his own or for technical reasons." *Id.*

The statute provides no further definition of the phrases "lawful status" or "through no fault of his own or for technical reasons." *See id.* But an implementing regulation does. As relevant here, the regulation defines "[l]awful immigration status" as "[a]n alien admitted to the United

States in nonimmigrant status . . . whose initial period of admission has not expired or whose nonimmigrant status has been extended." 8 C.F.R. § 245.1(d)(1)(ii). The regulation also interprets "[t]he parenthetical phrase other than through no fault of his or her own or for technical reasons" to mean "[a] technical violation resulting from inaction of [USCIS] (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and [USCIS] has not yet acted on that request)." *Id.* § 245.1(d)(2)(ii).[1] Thus, if an alien's lapse in lawful status "result[s] from inaction of" USCIS, the lapse is excused and will not render the alien ineligible for adjustment of status under § 1255(c). *Id.*

The final relevant statutory provision is 8 U.S.C. § 1255(k). That provision creates an exception to § 1255(c)'s categorical bar on adjusting status even when an alien's lapse in lawful status is the alien's fault. Under § 1255(k), if an alien is eligible for certain employment-related visas, a lapse in lawful status will not preclude the alien from obtaining an adjustment of status so long as the lapse did not exceed an "aggregate period" of 180 days. *Id.* § 1255(k).[2] Put differently, § 1255(k) creates a blanket 180-day "grace period" for particular aliens. *See Peters v. Barr*, 954 F.3d 1238, 1240 (9th Cir. 2020). These individuals are not prohibited from adjusting status because of a lapse in lawful

---

[1] The regulation describes three other situations that satisfy § 1255(c)'s parenthetical phrase, none of which is relevant here. *See* 8 C.F.R. § 245.1(d)(2)(i), (iii)–(iv).

[2] Section 1255(k) contains several other conditions an alien must meet to take advantage of the 180-day grace period, but those conditions are not at issue.

status unless the lapse exceeded 180 days, at which point § 1255(c)'s prohibition would apply.

Two documents created by USCIS explain the agency's interpretation of these statutory and regulatory provisions when adjudicating an alien's application to adjust status. The first document is a memorandum issued in 2008 by Donald Neufeld revising USCIS's *Adjudicator's Field Manual,* Chapter 23.5(d). Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations, United States Citizenship and Immigration Services (July 14, 2008) [hereinafter Neufeld Memo]. The Neufeld Memo primarily focused on the interaction between § 1255(k) and § 1255(c). *See id.* at 1.

As relevant here, the Neufeld Memo explored the concept of "lawful immigration status" and the effect a pending application for an extension of or adjustment in status has on an alien's legal standing. Consistent with the regulatory definition of "lawful immigration status," the Neufeld Memo notes that "[e]xpiration, revocation, or violation of status puts a nonimmigrant out of status, and the alien remains out of status until some adjudication restores status or the alien departs the United States." *Id.* at 5. Thus, merely filing an application to extend lawful status does not grant the alien lawful status: "The period during which an alien has a pending [extension of stay], [change of status], or adjustment of status application does not constitute, in and of itself, a period in which the alien is in a lawful 'status.'" *Id.* at 6.[3] If,

---

[3] By way of example, the Neufeld Memo states, "if an alien applied for adjustment of status three days prior to the expiration of his or her nonimmigrant status and the adjustment of status application was eventually denied, the alien will not be considered to be in lawful status after the expiration of the nonimmigrant status." Neufeld Memo at 5.

however, the application is "ultimately approved," USCIS will treat the alien as if "the alien was in a lawful nonimmigrant status" during the application's pendency. *Id.* Additionally, the Neufeld Memo took the position that where the unlawful status resulted from a "'technical violation' or through no fault of the applicant, . . . such period does not count against the 180-day period" allowed by § 1255(k). *Id.*

The second document promulgated by USCIS is the agency's *Policy Manual*. In Volume Seven, Part B, Chapter Four of the *Policy Manual*, USCIS provides guidance for applying 8 C.F.R. § 245.1(d)(2). Recall that this regulation interprets § 1255(c)'s exculpatory clause—"through no fault [of the alien] or for technical reasons"—to include "[a] technical violation resulting from inaction of [USCIS] (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and [USCIS] has not yet acted on that request)." 8 C.F.R. § 245.1(d)(2)(ii). According to the *Policy Manual*, an alien may take advantage of this regulatory provision only if, prior to the expiration of the alien's lawful status, the alien "filed an application to extend or change nonimmigrant status that was meritorious in fact, not frivolous or fraudulent, or otherwise designed to delay removal or departure from the United States." Mirroring the analysis set forth in the Neufeld Memo, the *Policy Manual* notes that if the application is ultimately approved, "the start date of the extended status is retroactive to the expiration date of the initial or previously extended period of status." But if the application is denied, the alien's legal status lapsed on the expiration date, and "[a] technical violation resulting from inaction of [USCIS]" has not occurred. *See* 8 C.F.R. § 245.1(d)(2)(ii).

To illustrate this point, the *Policy Manual* provides the following example. An alien's legal status will expire on June 30, 2009. Prior to that date, on June 1, the alien files an application to extend his legal status for six months. USCIS does not act on that application before June 30, so the alien's lawful status expires. On August 1, 2009, the alien then files an application to adjust status. The *Policy Manual* explains that if USCIS eventually grants the June 1 application to extend status, "USCIS considers the [alien] to have continuously maintained lawful status for purposes of adjusting status." In other words, the lapse in lawful status is forgiven as a "technical violation resulting from inaction of USCIS." On the other hand, "if USCIS denied the extension application, the [alien] would have fallen out of status as of June 30 and would be barred from adjusting status, unless an exemption applies." Thus, according to USCIS's *Policy Manual*, whether an alien who filed a timely application to extend status may take advantage of 8 C.F.R. § 245.1(d)(2)(ii) depends on USCIS's final resolution of the extension application.

## B. *Facts and Proceedings*

With the legal framework and agency guidance in mind, we now turn to the facts of this case. Attias, a citizen of Israel, was admitted to the United States on a B-2 nonimmigrant visa in 2015. His B-2 visa was valid until November 2, 2015. In September 2015, Attias filed an application to change his B-2 visa to a B-1 visa.[4] USCIS approved Attias's application, changing Attias's status to a

---

[4] A B-1 visa is for business purposes. A B-2 visa is generally for tourism. *See* 8 U.S.C. § 1101(a)(15)(B).

B-1 nonimmigrant visa. Attias's B-1 visa was valid from February 29, 2016 to April 2, 2016.

On April 1, 2016, the day before his B-1 visa expired, Attias filed a Form I-539 Application to Extend/Change Nonimmigrant Status (Form I-539) requesting an extension of his B-1 visa until October 5, 2016. USCIS did not immediately act on this request, so Attias's B-1 visa expired the next day. Without the visa, Attias's continued presence in the United States was unlawful.

USCIS first responded to Attias's Form I-539 on July 19, 2016, when it requested that Attias submit additional evidence supporting his continued eligibility for a B-1 visa. Attias responded to the request for evidence on August 16, 2016. Nearly a year later, on July 25, 2017, USCIS denied Attias's application to extend his B-1 visa, explaining that Attias had failed to demonstrate that his presence in the United States would be temporary, making him ineligible for the visa.

Attias did not challenge that decision. Instead, even before his request to extend his B-1 visa was denied, Attias began attempting to obtain legal status through other means. On January 26, 2017, his employer filed a Form I-140 Immigrant Petition for Alien Worker, which was granted on November 29, 2017. In conjunction with that filing, Attias filed a Form I-485 Application for Adjustment of Status (Form I-485), requesting he be given lawful-permanent-resident status.

USCIS denied the Form I-485 on February 9, 2018. Relying on § 1255(c), § 1255(k), and 8 C.F.R. § 245.1, USCIS explained that because Attias's Form I-539

application to extend his B-1 visa was denied, Attias's "nonimmigrant status expired on April 2, 2016." Accordingly, the agency found that Attias "failed to maintain a valid nonimmigrant status from April 3, 2016 to January 25, 2017 which constitutes 9 months and 23 days (i.e. 298 days)." Because this lapse in legal status exceeded 180 days, USCIS determined that § 1255(k) did not apply. Thus, USCIS concluded that Attias was "restricted from adjusting [status] as described under [8 U.S.C. § 1255](c)(2), (7) or (8)," so Attias's "application may not be approved."[5]

Attias timely sought reconsideration of USCIS's decision. He claimed that his lapse in lawful status was excused under § 1255(c) because the lapse occurred "through no fault of his own or for technical reasons." Relying on 8 C.F.R. § 245.1(d)(2)(ii), Attias argued that USCIS's delay in acting on his timely filed Form I-539 caused a technical violation, excusing his unlawful status.

USCIS denied the motion to reconsider. Citing the Neufeld Memo, USCIS explained that an individual falls "out of status" upon "[e]xpiration, revocation, or violation of status," and the pendency of an "application does not constitute, in and of itself, a period in which the alien is in a lawful 'status.'" When Attias's B-2 visa expired on April 2, 2016, Attias was no longer in lawful status. Even though USCIS's inaction on Attias's Form I-539 "appears to have

---

[5] Because his employer's Form I-140 was granted, USCIS considered Attias to be in a lawful status beginning on January 26, 2017, the day that I-140 application was filed. Attias was therefore in lawful status on the day he filed his Form I-485 application to adjust his status. *Cf.* 8 U.S.C. § 1255(c)(2) (noting that it is generally an independent bar to adjustment of status if the alien "is in unlawful immigration status on the date of filing the application for adjustment.").

exceeded normal processing times," USCIS ultimately denied the Form I-539. And because the Form I-539 was denied, "the period during which [that] application was pending does not constitute a lawful status." Thus, Attias "failed to maintain a valid nonimmigrant status" for 298 days, rendering him ineligible for an adjustment of status to lawful permanent resident.

Following USCIS's denial of his motion to reconsider, Attias initiated this lawsuit. He requested that USCIS's judgment be set aside under the APA. Attias contended that USCIS had misread the statute and regulation, arguing that USCIS's delay in adjudicating his Form I-539 caused a "technical violation" under 8 C.F.R. § 245.1(d)(2)(ii) that excused his failure to maintain lawful status.

The district court rejected Attias's argument and granted summary judgment to USCIS. In its summary-judgment order, the district court sua sponte took judicial notice of USCIS's *Policy Manual*. The court found that the *Policy Manual*'s interpretation of 8 C.F.R. § 245.1(d)(2)(ii) was "not plainly erroneous or inconsistent with" the regulation, so that interpretation must control. And under USCIS's interpretation, Attias's lapse in lawful status was not excused because USCIS ultimately denied his Form I-539. Accordingly, USCIS's denial of Attias's I-485 was not contrary to law under the APA.

Following entry of the summary-judgment order, Attias filed a motion for reconsideration. The district court denied the motion, and this appeal followed.[6]

---

[6] The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  ANALYSIS

Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706.  Attias argues that USCIS's denial of his Form I-539 on the grounds that he failed to continuously maintain lawful status is contrary to § 1255(c) and 8 C.F.R. § 245.1(d)(2)(ii).  In his view, the facts of this case fall squarely within the text of the regulation—he "filed a timely request to maintain status" and USCIS did not "act[] on that request" between April 3, 2016 and January 25, 2017, the period of his lapse in lawful status.  *See* 8 C.F.R. § 245.1(d)(2)(ii).  As a result, his lapse in lawful status was the result of a "technical violation" and should be excused.

USCIS takes a different view.  It contends that its interpretation of 8 C.F.R. § 245.1(d)(2)(ii) set forth in the *Policy Manual* is entitled to deference.  And under that interpretation, no "technical violation" occurred here because Attias's Form I-539 was ultimately denied.  Thus, he fell out of lawful status when his B-1 visa expired on April 3, 2016, and that lapse in lawful status is not excused, precluding him from obtaining an adjustment of status to lawful permanent resident.

When faced with an agency's interpretation of its own regulation, we must first determine whether the regulation is

---

We review the district court's grant of summary judgment to USCIS de novo.  *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017).  We may affirm the district court's judgment "on any ground supported by the record."  *Lima v. U.S. Dep't of Educ.*, 947 F.3d 1122, 1125 (9th Cir. 2020).

"genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). To determine if a regulation's text is genuinely ambiguous, we must "resort[] to all the standard tools of interpretation," including analysis of the regulation's "text, structure, history, and purpose." *Id.* at 2414–15. If the regulation's text is unambiguous, we give no deference to the agency's interpretation: "[t]he regulation then just means what it means." *Kisor*, 139 S. Ct. at 2415. But if the regulation is ambiguous, we will defer to the agency's interpretation so long as that interpretation is "reasonable," is based on the agency's "substantive expertise," "reflect[s] [the agency's] fair and considered judgment," and represents "the agency's authoritative or official position." *Id.* at 2415–17 (internal quotation marks omitted).

As we previously noted, the regulatory provision primarily at issue here is 8 C.F.R. § 245.1(d)(2)(ii), which interprets § 1255(c)'s parenthetical exculpatory clause to include "[a] technical violation resulting from inaction of [USCIS]." The key textual phrase for our purposes is "resulting from." The phrase seems plain enough, but our instincts are confirmed in various dictionaries, which define "result" as "to proceed or arise as a consequence, effect, or conclusion." *Result*, Merriam-Webster.com (last visited June 23, 2020); *see also Result*, Black's Law Dictionary (11th ed. 2019) (defining "result" as "[t]o be a physical, logical, or legal consequence; to proceed as an outcome or conclusion"); *Result*, Oxford English Dictionary Online (last visited June 23, 2020) (defining "result" as "[t]o arise as a consequence, effect, or outcome of some action, process, or design"). Consistent with these definitions, a "technical violation" occurs under the regulation only if the violation is a consequence or effect of USCIS's inaction on a pending application. In other words, the alien's lapse in lawful status

must be caused by bureaucratic delay. If the lapse is caused by anything within the alien's control, including a failure to anticipate his deadlines, this subsection of the regulation does not apply. *See Xiao Lu Ma v. Sessions*, 907 F.3d 1191, 1199 (9th Cir. 2018) (explaining how the alien might have avoided "inflexible requirements [that] inevitably produce painful outcomes").

This reading of the phrase "resulting from" informs our interpretation of the example set forth in the regulation's text. Recall that the regulation articulates the following example of a technical violation: "where an applicant establishes that he or she properly filed a timely request to maintain status and [USCIS] has not yet acted on that request." 8 C.F.R. § 245.1(d)(2)(ii)*.* If read in isolation, this example appears to cast a broad net—so long as an alien files a timely application to maintain status, any lapse in legal status is excused while that application remains pending, even if the lapse is not caused by USCIS's inaction. But such a broad interpretation is inconsistent with the text of the regulation as a whole. Indeed, this interpretation would nullify the requirement that the lapse "result[] from" USCIS's inaction. *See id.*

Simple hypotheticals will demonstrate the point. Suppose that an alien files a timely, meritorious application to extend status. If USCIS acts with instantaneous dispatch, the application will be granted and there will be no lapse in the alien's status. If, however, USCIS does not act with such dispatch, the alien will be temporarily out of status until the application is granted. USCIS considers that gap in status to be "[a] technical violation resulting from inaction of [USCIS]." 8 C.F.R. § 245.1(d)(2)(ii). The technical violation is excused under § 1255(c). Let's change the hypothetical. Assume an alien files a clearly frivolous application to extend

lawful status just before the alien's lawful status expires. USCIS does not act on that application for several months, so the alien's lawful status lapses. Because the application is frivolous, USCIS will eventually deny it. In this scenario, the alien's lapse in lawful status did not *result from* USCIS's inaction, but instead resulted from the alien's substantive ineligibility for an extension of lawful status. That lapse is not a "technical violation" excused under § 1255(c). A "technical violation" thus occurs only if the alien's application to maintain lawful status is ultimately granted. *See* 8 C.F.R. § 245.1(d)(1)(ii) (stating that an alien is in lawful immigration status only if the alien's "admission has not expired or whose nonimmigrant status *has been extended*" (emphasis added)).

Attias raises two objections to this reading. First, Attias argues that § 1255(c)'s exculpatory clause "is equitable in nature," so it should be interpreted broadly. Generally, an ameliorative "rule will be interpreted and applied in an ameliorative fashion," especially in the immigration context. *Hernandez v. Ashcroft*, 345 F.3d 824, 840 (9th Cir. 2003). But this canon of construction "do[es] not override the principle that the ordinary meaning of words . . . controls." *Durand v. U.S. Dep't of Labor*, 662 F.3d 1106, 1109 (9th Cir. 2011).

Second, Attias claims that this reading renders 8 C.F.R. § 245.1(d)(2)(ii) entirely superfluous, and so it cannot be correct. *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 385–86 (2013). Attias points out that § 1255(c) and 8 C.F.R. § 245.1(d)(2)(ii) only apply when an alien "fail[s] . . . to maintain continuously a lawful status." 8 U.S.C. § 1255(c). Thus, in Attias's view, if USCIS considers an alien to have never fallen out of lawful status when it ultimately grants an

application, § 1255(c) and 8 C.F.R. § 245.1(d)(2)(ii) would never apply.

We disagree. When an alien's lapse in lawful status occurs "through no fault of his own or for technical reasons," the lapse is excused and USCIS will treat the alien as though he had continuously maintained lawful status. 8 U.S.C. § 1255(c); 8 C.F.R. § 245.1(b)(6). It makes no difference whether we would say that USCIS has engaged in a legal fiction or that USCIS has given retroactive effect to the application for an extension. If an alien's lapse qualifies for § 1255(c)'s exculpatory clause, the alien will be considered to have never been in unlawful status. The only reason USCIS can consider an alien "to have continuously maintained lawful status" when it ultimately grants an application to extend lawful status is because it is commanded by § 1255(c) to ignore a lapse in status that occurred for "technical reasons."

Because we believe this is the only way the regulation can be read, we conclude that the text is not "genuinely ambiguous." We thus need not grant *Auer* deference to USCIS's interpretation of the regulation. *See Kisor*, 139 S. Ct. at 2414.[7] And given our reading of the regulation, this case is easily resolved. Attias's lapse in lawful status was not caused by USCIS's inaction. To the contrary, Attias's lapse resulted from his substantive ineligibility for an extension of

---

[7] We note that USCIS's Neufeld Memo and *Policy Manual* read the regulation the same way we have. Even were we to reach the question of *Auer* deference, *a fortiori*, we would hold USCIS's interpretation to be reasonable. *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 931 (9th Cir. 2006) ("[W]e defer to [an] agency's interpretation of its regulation unless an alternative reading is *compelled* by the regulation's plain language . . . ." (internal quotation marks omitted)).

his B-1 visa.  By ultimately denying Attias's Form I-539, USCIS found that Attias failed to demonstrate his entitlement to an extension of B-1 status.  That failure, not USCIS's attendant delay in adjudicating the Form I-539, resulted in Attias being in unlawful status.  Accordingly, Attias's lapse in lawful status did not occur "through no fault of his own or for technical reasons," so the lapse is unexcused.  8 U.S.C. § 1255(c); 8 C.F.R. § 245.1(d)(2)(ii).  And because the duration of his lapse in lawful status exceeded 180 days, Attias may not take advantage of the 180-day grace period in § 1255(k).  Accordingly, he is ineligible for an adjustment of status to lawful-permanent-resident status.  *See* 8 U.S.C. § 1255(c); *see also Xiao Lu Ma*, 907 F.3d at 1199.  USCIS's denial of Attias's Form I-485 was not contrary to law under the APA, and the district court's grant of summary judgment to USCIS was proper.

## III.  CONCLUSION

We conclude Attias "failed . . . to maintain continuously a lawful status since entry into the United States."  8 U.S.C. § 1255(c).  He is thus statutorily ineligible for an adjustment of status to lawful permanent resident.  The judgment of the district court is

**AFFIRMED.**